## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RENE ROTHSTEIN RUBIN,        :      CIVIL ACTION
                                  :
        Plaintiff,            :      COMPLAINT
                                  :      JURY TRIAL DEMANDED
v.                                 :
                                  :      No.
MICHAEL P. MANGAN, ESQ.;       :
MANGAN & GINSBERG LLP;         :
STIFEL NICOLAUS & COMPANY., INC.; :
and MICHAEL ROTHSTEIN,          :
                                  :
        Defendants.          :
_____ :

## PLAINTIFF'S COMPLAINT

Plaintiff, Dr. Rene Rothstein Rubin ("Plaintiff"), an adult citizen of the Commonwealth of Pennsylvania, by and through her attorneys First Law Strategy Group, LLC and Marcus and Auerbach LLC, hereby files the instant Complaint in professional negligence against Defendants Michael P. Mangan, an attorney with the firm Mangan Ginsberg LLP; Mangan & Ginsberg LLP; Stifel, Nicolaus & Company, Inc.; and Michael Rothstein ("Defendants"), and alleges as follows based upon personal knowledge, and together with her own acts and experiences, and as to all other matters, based upon information and belief, including investigation conducted by Plaintiff's attorneys, the undersigned.

### I.     NATURE OF ACTION

1.     This is an action for damages against Defendants Michael P. Mangan, Esquire; Mangan & Ginsberg LLP; Stifel, Nicolaus & Company; and Michael Rothstein ("Defendants") for legal malpractice, breaches of fiduciary duties, and breach of contract.

## II.    THE PARTIES

2.      Plaintiff Rene Rothstein Rubin, MD ("Plaintiff" or "Dr. Rubin") is an adult individual and citizen of the Commonwealth of Pennsylvania residing therein at 434 North Highland Ave, Merion Station, PA 19066.

3.      Defendant Michael P. Mangan, Esquire ("Defendant" or "Defendant Mangan") is an adult individual and citizen of New York who is duly licensed to practice law in the state of New York[1], with an office at the law firm of Mangan Ginsberg LLP, located at 80 Maiden Lane, Suite 304, New York, NY 10038.  Plaintiff is asserting a professional liability claim against Defendant Mangan.

4.      Defendant Mangan & Ginsberg LLP is a domestic limited liability partnership incorporated under the laws of the State of New York, with its registered corporate address at 80 Maiden Lane, Suite 304, New York, New York 10038.

5.      Defendant Stifel, Nicolaus & Company, Inc. ("Defendant" or "Defendant Stifel") is an American investment bank and brokerage firm incorporated in Missouri, with its corporate headquarters at 501 North Broadway, St. Louis, Missouri 63102.  Defendant Stifel also does business throughout all 50 states and in London, with its major offices in Missouri, Maryland, California, New York, Alabama, Florida, and London, U.K.

6.      Defendant Michael Rothstein ("Defendant Rothstein" or "Mr. Rothstein") is an adult individual and citizen of New York.  Defendant Rothstein is also Plaintiff's younger brother.

7.      At all times relevant hereto, Defendants acted and/or failed to act in their personal and corporate capacities and by and through their duly authorized agents, servants, workmen,

---

[1] Upon a search of the New York Courts attorney database, it states that Mr. Mangan is required to "reregister within 30 days of birthday" and the next registration was due "August 2019," which was three months prior to the filing of this Complaint.

2

employees, and/or contractors, who were acting within the course and scope of their employment(s) and/or authority(ies); said agency including, but not limited to, actual, implied, apparent and/or ostensible agency; and by virtue of said agency, at all times material, Defendants are also vicariously liable for the negligence and breach of duty(ies) of said agents, servants, workmen, employees, and/or contractors as more fully set forth herein.

### III. JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) (diversity jurisdiction), as the matter at issue exceeds the sum of $75,000 exclusive of interests and costs, and is between citizens of different States.

9.     Defendant Mangan, upon information and belief, communicated with Plaintiff via electronic and telephonic means from his law offices located at Mangan & Ginsberg LLP, to Plaintiff's residence in Merion Station, Pennsylvania.

10.     Defendant Stifel regularly and systematically conducts business within the Commonwealth of Pennsylvania and has multiple branches located within the Commonwealth. Stifel also maintains a public finance office in Philadelphia. Stifel communicated with Plaintiff via electronic and telephonic means to her residence.

11.     Defendant Rothstein, while living outside of the Commonwealth of Pennsylvania, engaged in the acts described herein, which injured Plaintiff within the Commonwealth.

12.     Personal jurisdiction is properly exercised over the Defendants as a substantial part, if not all, of the services and communications provided by and emanating from Defendants were performed in part within this District and the matter in controversy primarily occurred to the Plaintiff within this District.

13.     Venue is also proper because a substantial part, if not all, of the services and communications were performed by the parties within this District, and the matter in controversy primarily occurred to Plaintiff within this district and the injury was incurred in this district.

## IV.    **FACTUAL BACKGROUND**

14.     Beginning in May 2014 through June 2014, Plaintiff's brothers, Defendant Rothstein, as well as her other brother Hy S. Rothstein, together with other of Plaintiff's family members, invested over $3 million dollars with Bright Lake L.P., in what they believed to be a hedge fund run by Ilan Preis, the founder and manager of the fund.

15.     Without Plaintiff's knowledge or consent, approximately $80,000-100,000 of Plaintiff's personal funds had been withdrawn from the account Plaintiff maintained at Defendant Stifel jointly with her siblings, and invested with Bright Lake.  To effectuate this withdrawal, a form directing it was submitted to, and accepted by, Defendant Stifel, bearing a forged signature of the Plaintiff.

16.     In about July 2015, according to a Complaint filed in the Supreme Court of the State of New York (the "Bright Lake Case"), Plaintiff's brothers and others learned that they had lost 99% of their outstanding investment, and that their accounts were now worth collectively just a few thousand dollars. *See* Complaint, No. 505078/2016, **filed April 4, 2016**, a true and correct copy of which is attached hereto as Exhibit "A."

17.     The eight plaintiffs in the Bright Lake Case included Plaintiff's brothers, along with Plaintiff's father (Martin Rothstein), Plaintiff's mother (Helen Rothstein), and Plaintiff's nieces (Michelle Sara Rothstein and Rebecca Rothstein), and, unbeknownst to Plaintiff at the time, Plaintiff herself. *Id.*

18.     The Bright Lake Case alleged claims of fraud, conversion, breaches of fiduciary duty and contract, among other claims. *Id.*

19.     Defendant was the attorney who brought the action in that case against Mr. Preis and the Bright Lake Investment firms. *Id.*

20.     Although Plaintiff's name was on the Complaint, she had not authorized her representation in this matter and was completely unaware of the filing of the action or of any of the facts relating to or giving rise to the action, at the time it was filed.

21.     Plaintiff only became aware of this action about a year and a half later in December 2018.

22.     Not only had Plaintiff been unaware up to that point that she was party to a case against Mr. Preis and others, she had, **until that point,** been unaware that part of the money at issue in that Bright Lake Case was hers, as it had been withdrawn from her joint investment account without her knowledge, and (as she learned later) by the use of her fraudulent signature.

23.     By the time Plaintiff had been alerted to the existence of the Bright Lake Case, that case had already concluded.  In fact, a default judgment had been issued by the Honorable Leon Ruchelsman against Mr. Preis and his Bright Lake entities earlier that year, **in January 2018,** as Defendants in that case had failed to enter or otherwise appear to defend themselves. *See* January 29, 2018 *Sitt v. Bright Lake* Default Judgment Order, Case No. 505078/2016, a true and correct copy of which is attached hereto as Exhibit "B."

24.     However, Mr. Preis was unable to be found, and the judgment was not (and still is not) likely to result in any return of investment money.

25.     As soon as she learned of the case **in December 2018**, Plaintiff reached out to the attorney on the pleadings, Defendant Michael Mangan, Esquire to inquire about the Bright Lake

Case and the status of her money, but he refused to return her phone calls or to respond in any other way.

26.     Plaintiff was persistent, and finally, **in March 2019,** in response to another contact from Plaintiff, Mr. Mangan responded.  Mangan and Plaintiff agreed to meet in a restaurant in Penn Station to discuss the case.

27.     During that meeting, Plaintiff alerted Mr. Mangan of her shock at being involved in a case she had not given her permission to join.  In response, Mr. Mangan told Plaintiff that since Mr. Preis had likely absconded with their money, he had brought a separate action against Wells Fargo and though she had not been included in that action, he promised her that he would "add her" to that action, and that even if she were not formally added, he represented that he would ensure that she would be party to any settlement or payout.

28.     Following this meeting, Plaintiff continued to email and call Defendant Mangan, but he continued to not return her phone calls or to respond in any other way.  Finally, in **July 2019**, after she threatened to report him to the New York Disciplinary Board, Defendant Mangan called her back.  During that call, he assured her he would add her to the Wells Fargo matter.

29.     To this end, Mr. Mangan sent Plaintiff the Stipulation of Confidentiality filed in the separate matter against Wells Fargo: *Sitt, et al. v. Wells Fargo Prime Services LLC, et al.*, FINRA Case No. 17-01773 ("Wells Fargo Case"), which also listed Michael Rothstein, Martin Rothstein, Helen Rothstein, Michelle Rothstein, and Rebecca Rothstein as plaintiffs (but not Plaintiff herself). *See* July 2018 *Sitt v. Wells Fargo* Stipulation of Confidentiality, a true and correct copy of which is attached hereto as Exhibit "C."  Mr. Mangan then directed Plaintiff to add her name and signature to the bottom of the document (which she did, *see* Exhibit C).  Mr. Mangan indicated

that by Plaintiff signing this document she would be added to the pleadings, and that he would be representing her in this next phase of the case.

30.     However, these representations were, at most, a hoax.  Unbeknownst to Plaintiff, the Wells Fargo Case had already settled earlier that month.[2]  Despite Defendant Mangan's representations to Plaintiff since March 2019 that he would represent her in this second matter, Plaintiff had never been added to the Wells Fargo pleadings; he had never alerted her to the case's progression or settlement, and Plaintiff did not receive any monies obtained as a result of that settlement.[3]

31.     Also, after repeated requests for her financial documents evidencing the illicit transactions, Defendant sent her documents via email which had presumably evidenced her authorization to make an "Entire Account Transfer" of monies in excess of $80,000 from her joint account with her brothers (presumably to be controlled by Mr. Preis at Wells Fargo).  *See* Mangan July 18, 2019 email, attaching Customer Account Transfers documents from Stifel Nicolaus, true and correct copies of which are attached together hereto as Exhibit "D."

32.     Inspection of the Stifel account documents, originally sent from a "Dmitriy Topchiy" at Wells Fargo Advisors Finet, 170 Broadway, Brooklyn, NY 11211, to Stifel, clearly depict that Plaintiff's carefully "signed" name differs drastically from Plaintiff's true signature on the Account Verification Information that Stifel Nicolaus had on file upon origination of Plaintiff's

---

[2] Plaintiff only became aware of the Wells Fargo Case settlement because, once again unable to reach Defendant Mangan, she reached out to *Wells Fargo's attorney*, Ms. Sandra Grannum, who was listed on Plaintiff's copy of the Stipulation of Confidentiality.  *See* Exhibit C.  At that point, Ms. Grannum alerted her that the matter had already settled and instructed to contact her own attorney.

[3] Plaintiff is not aware, and was never advised by Mr. Mangan, what the exact settlement terms were in the Wells Fargo case: according to FINRA, this matter was settled in mediation, and there are no publicly available documents in this case.

opening of her accounts. *See* Stifel Nicolaus Account Verification and Account Application, dated 10/17/2010, a true and correct copy of which is attached hereto as Exhibit "E."

33.     An exemplar of Plaintiff's true signature is on the left, below; the forged signature on the right (both taken from the above documents):



34.     As is immediately noticeable from the above, Plaintiff's actual handwriting as shown on Exhibit E (on the left) does not resemble in any way the handwriting contained on the later Stifel Account Transfers documents, Exhibit D (on the right).

35.     Defendant Michael Rothstein is also listed as the "Primary Owner" of the account on these documents. As the Primary Owner of the siblings' Account, it is understood that Michael Rothstein was to be the conduit between the broker (Stifel) and his siblings.

36.     Additionally, it is undisputed that it was Michael Rothstein's idea to invest his own funds and funds of his family members, with Mr. Preis (a long-time friend of Michael Rothstein) and Bright Lake L.P.

37.     The Bright Lake Complaint, although flawed in many ways, definitively states that **"Michael [Rothstein] had authority over all five of the family accounts but only consented to make investments with Preis in Bright Lake L.P. for two accounts**, creating a personal account with his own funds started with a check in the amount of $100,000 (Rothstein Account 1), and **an account for the Siblings' funds, the the [sic] Siblings Account, in the amount of approximately $200,000 (Rothstein Account 5),** which Preis transferred from WFA to Bright Lake in or about May 2014." *See* Exhibit A, at para. 48. The "Siblings Account" referenced in

the Bright Lake Case Complaint is the same account (ending in 8805) referenced on the Account

Transfer Documents (Exhibit D).

38.     Plaintiff had no knowledge of her fraudulent signature being affixed to the Stifel

Account Transfer documents (Exhibit D) until July 2019.  She did not know that she was being

represented by Mangan in the Bright Lake Case (and then later, not represented in the Wells Fargo

Case) for the depletion of these accounts until December 2018.

39.     Plaintiff's repeated attempts to reach Mr. Mangan following their July 2019

exchange have been futile.

40.     On October 7, 2019, Plaintiff sent correspondence to Defendants Mangan and

Stifel, requesting her respective file(s).  See October 7, 2019 letter to Attorney Mangan, and

October 8 letter to Stifel, true and correct copies of which are attached hereto as Exhibit "F."

41.     On October 23, 2019, Plaintiff received her initial Account Verification documents

from Stifel. *See* Stifel Account information, Exhibit E.

42.     To date, Plaintiff has received nothing from Defendant Mangan.

## COUNT I: PROFESSIONAL NEGLIGENCE and BREACH OF FIDUCIARY DUTIES- ATTORNEY MALPRACTICE (against Defendant Mangan)

43.     Plaintiff incorporates by reference the foregoing paragraphs as though fully set

forth herein.

44.     At all times relevant hereto, upon information and belief, Defendant Michael

Mangan was an attorney duly licensed to practice law in the State of New York.

45.     Defendant Mangan deviated from the standard of care practiced by attorneys in his

field of practice and breached his fiduciary duty of care and his duty of loyalty to Plaintiff in the

following manner:

9

1. From on or about April 2016, representing Plaintiff in the Bright Lake case, without having previously obtained Plaintiff's prior permission;

2. Never once contacting Plaintiff regarding the progress or resolution of this case while it was being prosecuted;

3. Failing to provide timely and complete responses to Plaintiff's demands following her contacting him in December 2018;

4. Fraudulently representing to Plaintiff that he would represent her in related matters against Wells Fargo, by having Plaintiff sign the Confidentiality Order (Exhibit D);

5. Failing to then include Plaintiff in the Wells Fargo Case, contrary to his direct representations;

6. Failing to communicate with Plaintiff at all regarding the progress or resolution of the Wells Fargo case while it was being prosecuted, ostensibly on her behalf;

7. Failing to communicate with Plaintiff following the settlement of the Wells Fargo Case;

8. Failing to generally provide appropriate and necessary legal advice to Plaintiff in either case, having represented to both her, and the outside world, that he was her lawyer;

9. And failing to provide any responses to Plaintiff's demands for release of her complete file; and

10. Such other conduct that deviated from accepted standards of care as may be developed in discovery.

46.     As a result of Defendant Mangan's conduct, Plaintiff has been damaged, as she has lost her initial investments, and has not been able to benefit from any settlement between plaintiffs and defendants in the Wells Fargo case.

WHEREFORE, Plaintiff demands judgment against Defendant Mangan for compensatory, consequential, and punitive damages; plus interest and costs, and such other relief as this Honorable Court may deem appropriate.

## COUNT II: LEGAL MALPRACTICE- RESPONDEAT SUPERIOR
### (against Defendant Mangan & Ginsberg LLP)

47.      Plaintiff incorporates by reference the foregoing paragraphs as though fully set forth herein.

48.      At all times relevant to the allegations contained in this complaint, Defendant Mangan was an officer, shareholder, employee, or agent of Defendant Mangan & Ginsberg LLP working within the scope of his employment and with the knowledge and consent of Mangan & Ginsberg LLP.

49.      Mangan & Ginsberg LLP is liable to Plaintiff under the doctrine of respondeat superior.

WHEREFORE, Plaintiff demands judgment against Defendant Mangan & Ginsberg LLP for compensatory, consequential, and punitive damages; plus interest and costs, and such other relief as this Honorable Court may deem appropriate.

## COUNT III: BREACH OF CONTRACT
### (against Defendant Stifel)

50.      Plaintiff incorporates by reference the foregoing paragraphs as though fully set forth herein.

51.      Upon information and belief, Plaintiff's account required all three signatures of the joint account holders to make any changes to the account.

52.      As Plaintiff's broker, Defendant Stifel was under specific contractual obligation to ascertain Plaintiff's identity when changes to the account were being made.

53.      Defendant Stifel breached its contract with Plaintiff by failing to properly verify the signatures on its Account Transfer documents (Exhibit D) against Plaintiff's actual handwriting

as shown on her Account Verification and Account Application (Exhibit E), which, if done, would have put Stifel on notice of the fraudulent signature.

54.    As a result of Defendant Stifel's conduct, Plaintiff has been damaged, as she has lost her initial investments and potential interest.

WHEREFORE, Plaintiff demands judgment against Defendant Stifel for compensatory, consequential, and punitive damages; plus interest and costs, and such other relief as this Honorable Court may deem appropriate.

## COUNT IV: BREACH OF FIDUCIARY DUTY
### (against Defendant Stifel)

55.    Plaintiff incorporates by reference the foregoing paragraphs as though fully set forth herein.

56.    As Plaintiff's broker, Defendant Stifel has a fiduciary obligation to this client as an agent to a principal.

57.    Upon information and belief, Plaintiff's account required all three signatures of the joint account holders to make any changes to the account.

58.    In addition, Defendant Stifel is under specific obligation as a broker-dealer to comply with SEC regulations, as contained in 31 C.F.R. § 1023.210 and 1023.220, to verify the identities of their customers such that it is able "to form a reasonable belief that it knows the true identity of each customer" based on "the various types of identifying information available." See 31 C.F.R § 1023.220(a)(2).

59.    Defendant Stifel breached its fiduciary duty of care to Plaintiff by failing to properly verify the signatures on its Account Transfer documents (Exhibit D) against Plaintiff's actual handwriting as shown on her Account Verification and Account Application (Exhibit E), which, if done, would have put Stifel on notice of the fraudulent signature.

60.     As a result of Defendant Stifel's conduct, Plaintiff has been damaged, as she has lost her initial investments and potential interest.

WHEREFORE, Plaintiff demands judgment against Defendant Stifel for compensatory, consequential, and punitive damages; plus interest and costs, and such other relief as this Honorable Court may deem appropriate.

**COUNT V: BREACH OF FIDUCIARY DUTY**
**(against Defendant Michael Rothstein)**

61.     Plaintiff incorporates by reference the foregoing paragraphs as though fully set forth herein.

62.     As the Primary Member on Plaintiff's joint account, Defendant Rothstein was under a duty to the other signatories on the account (his brother Hy Rothstein, and Plaintiff), to maintain contact between the bank and his siblings for all administrative matters.

63.     Also, as alleged in the previous Bright Lake Complaint, Defendant Rothstein had authority over the siblings' joint account and himself consented to make investments in Bright Lake L.P. for this account.

64.     Upon information and belief, Plaintiff's joint account with Stifel required all three signatures of the joint account holders to make any changes to the account.

65.     Plaintiff placed her trust and confidence in Michael Rothstein to not misappropriate assets from the joint account, as he is her brother, and was a joint tenant on the joint accounts.

66.     However, as Primary Owner, at a minimum Defendant Rothstein failed to properly verify the signatures on the Account Transfer documents (Exhibit D) against Plaintiff's actual handwriting (which, as her brother, and as joint signatory to other accounts, he must have been aware).

67.     Thus, Defendant Rothstein breached his fiduciary duty of care to Plaintiff by allowing the transmittance of a fraudulent, forged signature via facsimile from Wells Fargo to Stifel.

68.     As a result of Defendant Rothstein's conduct, Plaintiff has been damaged, as she has lost her initial investments and potential interest.

WHEREFORE, Plaintiff demands judgment against Defendant Michael Rothstein for compensatory, consequential, and punitive damages; plus interest and costs, and such other relief as this Honorable Court may deem appropriate.

DATED: NOVEMBER 11, 2019                    FIRST LAW STRATEGY GROUP, LLC

BY: _____

DAVID S. SENOFF, ESQUIRE
HILLARY B. WEINSTEIN, ESQUIRE
121 S. BROAD STREET, SUITE 300
PHILADELPHIA, PA 19107
DSENOFF@FIRSTLAWSTRATEGY.COM
HWEINSTEIN@FIRSTLAWSTRATEGY.COM
PHONE: (215) 258-4700
FAX: (215) 258-4777

JEROME M. MARCUS, ESQUIRE
MARCUS & AUERBACH, LLC
1121 N. BETHLEHEM PIKE, SUITE 60-242
SPRING HOUSE, PA 19477
(215) 885-2250
JMARCUS@MARCUSAUERBACH.COM