Exhibit "A"

SUPREME COURT: STATE OF NEW YORK
COUNTY OF KINGS: COMMERCIAL DIVISION
-------------------------------------------------------------------x
HAL SITT, MICHAEL ROTHSTEIN,
MARTIN ROTHSTEIN, HELEN ROTHSTEIN,
HY S. ROTHSTEIN, RENE ROTHSTEIN-RUBIN,
MICHELLE SARA ROTHSTEIN
and REBECCA ROTHSTEIN,

**COMPLAINT**

Index No.

Plaintiffs,

- against -

ILAN PREIS, BRIGHT LAKE, L.P., BRIGHT LAKE
MANAGEMENT LLC, BRIGHT LAKE INVESTMENT
SERVICES LIMITED LIABILITY COMPANY,
BRIGHT LAKE FUND LIMITED PARTNERSHIP,
BRIGHT LAKE CAPITAL LLC, BRIGHT LAKE
ADVISORS LLC,

Defendants
-------------------------------------------------------------------x

Plaintiffs, HAL SITT, MICHAEL ROTHSTEIN, MARTIN ROTHSTEIN, HELEN

ROTHSTEIN, HY S. ROTHSTEIN, RENE ROTHSTEIN-RUBIN, MICHELLE SARA

ROTHSTEIN and REBECCA ROTHSTEIN, by their attorneys, **MANGAN GINSBERG LLP**,

alleges as follows, upon information and belief, and at all times hereinafter:

## I.     NATURE OF THE ACTION

1.      Plaintiffs are eight (8) individuals who invested more than $9.6 million with Bright Lake

L.P., a "hedge fund" in or about June 2014, and lost 99% of their assets by June 2015. The

individual responsible for this loss, Ilan Preis, is the founder and manager of the fund, and the

architect of a fraudulent scheme against the plaintiffs. Plaintiffs bring this action against Preis,

Bright Lake L.P. and the general partner, Bright Lake Management LLC, for fraud, conversion,

breach of fiduciary duty, unjust enrichment and breach of contract. Plaintiffs made their

investments into the hedge fund at Preis' urging, beginning in May 2014 and by June 2015, Preis

and Bright Lake L.P. stopped communicating with the plaintiffs. In about July 2015, the

plaintiffs learned that they had lost approximately 99% of their outstanding investment, and their accounts were collectively worth just a few thousand dollars.[1] Ilan Preis preyed on the plaintiffs, none of whom were sophisticated investors, and tricked them into believing that he would be operating a legitimate fund that was affiliated with Wells Fargo Securities and J.P. Morgan Chase. By the summer of 2015, Preis had warned the plaintiffs not to try to communicate with him. Preis told the plaintiffs that the Bright Lake office located in a building owned by Preis' father, Dr. Oded Preis, had been closed. The Bright Lake website has been taken down, and there are no longer any open telephone lines with which to communicate with anyone at Bright Lake. The third party administrator for the fund, Maitland Administration LLC has since informed plaintiffs that is no longer provides any services for Bright Lake, and Bright Lake's prime broker, Wells Fargo Prime Services, and the clearing agent, J.P. Morgan Clearing Corp., have refused to provide any information about the plaintiffs' investment. It is believed that Preis absconded with almost $9 million of the plaintiffs' money, after using the hedge fund as a means of converting the life savings of two families to his own possession.

## II.    PARTIES

2.    Plaintiff HAL SITT, is an individual residing in Brooklyn, New York. He is 79 years old, retired and invested a total of approximately $6,478,505.59 with Ilan Preis and Bright Lake L.P. in or about June 2014.

3.    Plaintiff MICHAEL ROTHSTEIN, is an individual residing in Brooklyn, New York.  He invested his own funds and funds on behalf of his family members, of approximately $385,764.14 with their consent and authority, with Ilan Preis and Bright Lake L.P.

---

[1] Approximately $1,065,000 of Hal Sitt's IRA investment was withdrawn from the Bright Lake account before Preis was able to transfer the 99% of the remaining $8.6 million of plaintiffs' investment to his own accounts and is excluded from the 99% figure.

2

4.    Plaintiff MARTIN ROTHSTEIN, is an individual retired and residing in Florida. Martin, the father of plaintiffs Michael Rothstein, Hy S. Rothstein and Rene Rothstein-Rubin, and the grandfather of Michelle Sara Rothstein and Rebecca Rothstein. Martin is married to and living with his wife Helen Rothstein, in Florida, having moved from Brooklyn, New York, in or about 2014. He, together with his wife, Helen Rothstein, invested approximately $2,884,368.83 with Ilan Preis and Bright Lake L.P. in June 2014.

5.    Plaintiff HELEN ROTHSTEIN, is an individual residing in Florida. She is retired and living with her husband, Martin Rothstein.

6.    Plaintiff HY. S. ROTHSTEIN, is an individual residing in California, and was an investor in Bright Lake L.P. in the Siblings' Account, together with Michael Rothstein and Rene Rothstein-Rubin.

7.    Plaintiff RENE ROTHSTEIN-RUBIN, is an individual residing in Pennsylvania, and was an investor in Bright Lake L.P. in the Siblings Account, together with Michael Rothstein and Hy. S. Rothstein.

8.    Plaintiff MICHELLE SARA ROTHSTEIN, is the daughter of Michael Rothstein, and is an individual residing in Brooklyn, New York. Her money was invested in Bright Lake L.P., though the investment was not authorized and Ilan Preis was directed not to deposit her funds.

9.    Plaintiff REBECCA ROTHSTEIN, is the daughter of Michael Rothstein, and is an individual residing in Brooklyn, New York. Her money was invested in Bright Lake L.P., though the investment was not authorized and Ilan Preis was directed not to deposit her funds.

10.    Defendant ILAN PREIS is an individual residing at 1936 Bergen Avenue in Brooklyn, New York. He is the architect and perpetrator of the fraud against these plaintiffs, and, upon information and belief, formed, controls and owns Bright Lake L.P., Bright Lake Management

3

LLC, Bright Lake Investment Services Limited Liability Company, Bright Lake Fund Limited Partnership, Bright Lake Capital LLC, and Bright Lake Advisors, as means of executing the fraud.

11.     Defendant BRIGHT LAKE L.P. is a limited partnership organized under the laws of New York, and purports to be a "hedge fund," and was located at 1729 East 12th Street in Brooklyn, with an official address of 1936 Bergen Avenue, Suite 3D, Brooklyn, New York 11234.

12.     Defendant BRIGHT LAKE MANAGEMENT LLC, is a New York limited liability company, and is, upon information and belief, wholly owned by defendant Ilan Preis, and is located at the address of 1936 Bergen Avenue, Suite 3D, Brooklyn, New York 11234.

13.     Defendant BRIGHT LAKE INVESTMENT SERVICES LIMITED LIABILITY COMPANY, is a New York limited liability company, and is, upon information and belief, wholly owned and controlled by Ilan Preis and is affiliated with defendant BRIGHT LAKE L.P. and participated in the fraud and conversion of the plaintiffs' property and is located at the address of 1936 Bergen Avenue, Suite 3D, Brooklyn, New York 11234.

14.     Defendant BRIGHT LAKE FUND LIMITED PARTNERSHIP, is a New York limited liability company, and is, upon information and belief, wholly owned and controlled by Ilan Preis and is affiliated with defendant BRIGHT LAKE L.P. and participated in the fraud and conversion of the plaintiffs' property, and is located at the address of 1936 Bergen Avenue, Suite 3D, Brooklyn, New York 11234.

15.     Defendant BRIGHT LAKE CAPITAL LLC, is a New York limited liability company, and is, upon information and belief, wholly owned and controlled by Ilan Preis and is affiliated with defendant BRIGHT LAKE L.P. and participated in the fraud and conversion of the

4

plaintiffs' property, and is located at the address of 1936 Bergen Avenue, Suite 3D, Brooklyn, New York 11234.

16.     Defendant BRIGHT LAKE ADVISORS LLC, is a New York limited liability company, and is, upon information and belief, wholly owned and controlled by Ilan Preis and is affiliated with defendant BRIGHT LAKE L.P. and participated in the fraud and conversion of the plaintiffs' property, and is located at the address of 1936 Bergen Avenue, Suite 3D, Brooklyn, New York 11234.

## III.   FACTS

17.     Plaintiff Hal Sitt met Ilan Preis in or about 2008 while Preis was working as a securities broker for Chase Investment Services Corp. ("Chase Investment").

18.     Sitt agreed to have Preis serve as his broker for accounts he maintained Chase Investment, including both Individual Retirement Accounts ("IRA"s) and non-IRA accounts.

19.     Michael Rothstein, and his father Martin Rothstein, were introduced to Preis in or about 2007. At that time, Michael and Martin had used Chase as their bank for several years, both with checking and savings accounts. In 2007, the Rothstein's were encouraged to open equity investment accounts at Chase Investment with Preis, which they did.  The Rothsteins used Ilan Preis as their Chase Investment broker from about 2007 though to 2010.

20.     During the period of time that Preis was their stock broker, he would make frequent personal calls to their homes and offices. Preis would regularly drop by at Michael Rothstein's office to bring him lunch and discuss Rothstein's account, along with many other things unrelated to equity investments.

21.     Preis did the same thing with Sitt, coming to his house and forging a personal relationship with him and his family members.

5

22.   Preis left Chase Investment for Citigroup Global Markets Inc. ("CitiGroup") in June 2010, and convinced both Sitt and the Rothstein to follow him there by moving their money from Chase Investment to Citigroup. Hal Sitt and Michael Rothstein each opened brokerage accounts at Citigroup, to be managed by Preis as their broker.

23.   In June 2010, Michael Rothstein's account at CitiGroup was worth about $1.5 million.

24.   At that time, Hal Stitt's account at CitiGroup was worth about $7 million.

25.   Preis remained at CitiGroup, managing the Rothstein and Sitt accounts, along with other accounts, until about October 2012 when he was terminated by CitiGroup.

26.   Upon his termination, Preis was no longer registered with a brokerage license with any firm, and would remain unlicensed until the date of this Complaint.

27.   After being terminated, however, Preis convinced Hal Sitt to move all of his accounts from CitiGroup to a Wells Fargo Advisors Financial Network ("WFA") branch office located at 1729 East 12th Street in Brooklyn, in a building owned by Preis' father, Dr. Oded Preis.

28.   This move from CitiGroup to WFA, suggested Preis, would allow him to manage Sitt's accounts. Based on what Preis said to him, and the fact that the WFA branch was located at 1729 East 12th Street, Sitt believed that Preis was working for Wells Fargo Advisors. Preis set Sitt up with his friend and confederate stock broker, Mikhail Flishtinskiy, who served as WFA's Branch Office Manager of 1729 East 12th Street, Brooklyn branch.

29.   Preis also tried to convince Rothstein to move his accounts from Citigroup to WFA, but Rothstein chose instead to return his accounts to Chase Investments, in late 2010.

30.   An exception for Rothstein, was, however, an account he owned jointly with his brother Hy S. Rothstein and his sister Rene Rothstein-Rubin (the "Sibling Account"). Chase Investments had not accepted the transfer because the ACAT did not contain signatures from all joint owners.

6

Knowing this, Preis, somehow and without providing explicit explanation to Michael, moved the Sibling Account from Citigroup to WFA to be managed by Flishtinskiy.

31.   In late 2013 and early 2014, Preis started his plans to form a hedge fund that he would eventually call Bright Lake L.P., to be run from the office at 1729 East 12th Street.

32.   Preis opened Bright Lake L.P. in or about May 2014, using Wells Fargo Prime Services as the prime broker, J.P. Morgan Clearing Corporation Inc. as the custodian and clearing corporation, and Maitland Administration LLC (p/k/a "Admiral") as administrator.

33.   By June 2015, Preis either absconded with, or lost,[2] approximately $8,674,063.93 of the plaintiffs' money. The following chart represents the investments and losses:

| Plaintiffs' Accounts | Investment | Closing Amts | Withdrawals | Losses | Percent Loss |
|---|---|---|---|---|---|
| Hal Sitt Non-IRA | $3,617,938.28 | $1,562.00 | $0.00 | $3,616,376.28 | 99.96% |
| Hal Sitt IRA | $2,860,567.31 | $825.61 | $1,065,000.00 | $1,794,741.70 | 62.74% |
| Michael Rothstein (Rothstein Acct 1) | $100,000.00 | $791.72 | $0.00 | $99,208.28 | 99.21% |
| Martin & Helen (Rothstein Acct 2) | $2,884,368.83 | $2,226.41 | $0.00 | $2,882,142.42 | 99.92% |
| Michelle Sara (Rothstein Acct 3) | $43,425.84 | $2,007.14 | $0.00 | $41,418.70 | 95.38% |
| Rebecca Rothstein (Rothstein Acct 4) | $42,338.30 | $1,956.88 | $0.00 | $40,381.42 | 95.38% |
| Rothstein Siblings (Rothstein Acct 5) | $200,000.00 | $204.87 | $0.00 | $199,795.13 | 99.90% |
| TOTALS | $9,748,638.56 | $9,574.63 | $1,065,000.00 | $8,674,063.93 | 88.98% |

---

[2] It is unknown specifically what occurred because Wells Fargo Prime Services, JP Morgan Clearing Corp and Maitland have refused to provide trading data, however, according the Maitland account statements, plaintiffs' accounts dropped approximately 50% in value in March 2015, and then dropped another approximate 85-90% for each month until June 2015 when it ceased generating statements through Maitland.

7

A.    THE SITT ACCOUNT.

34.    Preis arranged for Sitt to transfer his IRA and non-IRA Citigroup brokerage accounts to Wells Fargo Advisors to be managed by Preis' friend and confederate, Mikhail Flishtinskiy. This would allow Preis to control the Sitt accounts through his arrangements with Flishtinskiy and others friends he had at Wells Fargo Advisors. The Wells Fargo Advisors branch office was run out of a building owned by Preis' father, Dr. Oded Preis, at 1729 East 12th Street in Brooklyn, on the bottom floor of the building.

35.    During the period of time that Hal Sitt's accounts were parked with WFA, between about November 2012 and June 2014. Flishtinskiy was the registered representative along with Carlos Mejia. Upon information and belief, Preis was also working in that office and had actual control over the accounts by instructing Flishtinskiy and Mejia.

36.    Preis was not employed or registered with WFA not authorized to service the accounts.

37.    In June 2014, Preis told Sitt that was opening a hedge fund that would be run through Wells Fargoo and JP Morgan Chase. Sitt had no knowledge of the function of a "hedge fund" or the manner of its operations or risks, and believed that investing his money in a hedge fund would be similar to investing with an ordinary retail broker-dealer, such as Well Fargo.

38.    Sitt relied on Preis because of prior relationship and authorized Preis to arrange for the transfer of his entire savings of approximately $6,478,505.59.

39.    Sitt's five separate WFA accounts, including Individual Retirement Accounts ("IRA's") and non-IRA accounts WFA accounts were, upon information and belief, liquidated and transferred from WFA to Wells Fargo Prime Services and J.P. Morgan Clearing Corporation, in the name of Bright Lake L.P. Some of Sitt's WFA accounts were annuities that had to be liquidated and were subject to "surrender fees." Preis convinced Sitt that if there were any

8

applicable surrender fees, they would be "absorbed," or covered by, Bright Lake. Sitt was convinced that he would not suffer any personal loss or penalties due to the liquidation of these annuities, nor for fees or penalties to which IRA withdrawals may be subject.

40.     Sitt executed a Bright Lake L.P. private placement memorandum, (see PPM, a true and accurate copy of which is attached herein as "**Exhibit 1**"), and a subscription agreement (*see* Subscription Agreement, a true and accurate copy of which is attached as "**Exhibit 2**".)

41.     Sitt received account statements from a Third Party administrator, Admiral Administration LLC, later named "Maitland Administration LLC" ("Maitland"), designated in two separate accounts: one for a non-IRA investment and another for the IRA accounts.

42.     According to Admiral/Maitland, Sitt's non-IRA Bright Lake investment was dropped from $3,785,793.00 on February 28, 2015 to $1,897,772 by March 31, 2015. The Account further declined to $155,481 by April 2015, and to $1,562.00 by June 2015.

43.     According to Admiral/Maitland, Sitt's IRA investment at Bright Lake L.P. dropped from $2,000,883.00 on February 28, 2015 to $1,003,013.00 by March 31, 2015, to $82,175.00 by April 2015 and to $825.61 by June 2015.

44.     When Sitt called Preis in or about April 2015 to find out what happed to his accounts, and in particular his IRA account, Preis told Sitt that he was sorry about the losses, but that $715,000 had been lost. In addition to this, in late 2014 and early 2015, before the dramatic drops in the account values, Sitt had withdrawn approximately $300,000. In total, Preis and the other defendants converted or lost, approximately $5.4 million dollars of Sitt's funds, which represent his entire life savings and a lifetime of his work.

9

B.    THE ROTHSTEIN ACCOUNTS.

45.    Through his relationship with Michael Rothstein, the son, and Martin Rothstein, the
father, Preis was able to arrange for an investment of approximately three million, two-hundred
and seventy thousand and one-hundred and thirty two dollars and ninety-seven cents
($3,270,132.97), from the Rothstein family members, Michael, Martin, Helen, the mother, Hy S.
another son, Rene Rothstein-Rubin, the daughter, Michelle Sara, Michael's daughter, and
Rebecca, Michael's second daughter.

46.    This Rothstein investment of $3,270,132.97, was separated into five Bright Lake
accounts including Michael's investment of $100,000 ("Rothstein Account 1"); Helen and
Martin's joint account $2,884, 368.83 ("Rothstein Account 2"); Michelle Sara Rothstein's
investment of $43,425.84 ("Rothstein Account 3") and Rebecca Rothstein in the amount of
$42,338.30 ("Rothstein Account 4"); and an account jointly owned by me and my two siblings,
Hy S. Rothstein and Rene Rothstein-Rubin, with an initial investment of approximately
($200,000) (the "Sibling Account" or "Rothstein Account 5").

47.    Preis represented to Michael Rothstein that he was starting a hedge fund called Bright
Lake that had assets under management of $50 million dollars. Preis encouraged Michael to have
all of his accounts, which were held at Chase Investments, transferred to Bright Lake L.P.

48.    Michael had authority over all five of the family accounts but only consented to make
investments with Preis in Bright Lake L.P. for two accounts, creating a personal account with his
own funds started with a check in the amount of $100,000 (Rothstein Account 1), and an account
for the Siblings' funds, the the Siblings Account, in the amount of approximately $200,000
(Rothstein Account 5), which Preis transferred from WFA to Bright Lake in or about May 2014.
However, Michael Rothstein never executed any account agreement, partnership agreement,

10

subscription agreement, or any other agreement to transfer or introduce these investments to Bright Lake. It is unknown what documents, if any, Preis provided to the prime broker, Wells Fargo Prime Services, and the custodian J.P. Morgan Clearing Corp., to open these accounts.

49.     In addition to Michael's personal account and the Sibling Account, Michel Rothstein gave Ilan Preis two checks, in or about early 2015, representing money held on behalf of his two daughters, Michelle Sara and Rebecca. These checks were provided to Preis to open accounts in Bright Lake L.P., Rothstein Account 3 and Account 4.

50.     However, in or about April 2015, when Michael realized that the Bright Lake investment was plummeting, he instructed Preis to return the checks to him, and not to deposit them in Bright Lake L.P. Preis received the instruction, by telephone, and confirmed that he would not deposit them. Nonetheless, over the explicit instruction and agreement that he would not deposit the checks into Bright Lake L.P., Preis did make those deposits and the money was immediately depleted from the account. By the time the Maitland account statements for Rothstein Accounts 3 and 4 arrived, Michelle Sara's and Rebecca's money had vanished without explanation.

51.     Sometime in or about early 2015, Michael also learned that Preis had contacted his father, Martin Rothstein, who was retired and living in Florida with his wife, Helen Rothstein, who was suffering from Alzheimer's disease. In or about May 2014, Preis had Martin transfer brokerage accounts for himself and Helen from a firm called Stifel Nicholas Investment Company JP Morgan Clearing Corp. to initiate the Bright Lake L.P. account. The total value of these securities at the time of their transfer was approximately $2,884,368.83. Upon information and belief, once Martin and Helen's securities were transferred to JP Morgan Clearing Corp., they were liquidated by Wells Fargo Prime Brokerage and the proceeds were held Bright Lake L.P. in a joint account under Martin and Helen's names.

11

52.     Neither Martin nor Helen were aware of the operation and risks of a hedge fund, nor was that explained to either of them. Upon information and belief, neither of them ever signed a partnership agreement, a subscription agreement or any other agreement to initiate a Bright Lake L.P. investment, and it is unknown what documents, if any, were considered by JP Morgan Clearing Corp or Wells Fargo Prime Services when they accepted transfer of the securities.

53.     Admiral/Maitland sent statements of Helen and Martin's account to Michael, by email, beginning in or about November 2014. According to the statement for October 2014, provided in November, the value of Martin and Helen's investment was $3,163,224.00. By March 2015, the value of that account, as reported by Maitland, dropped to $1,630,224.84 and by April 2015, it had fallen to $134,241.28. By June 2015, Maitland reported that Martin and Helen's account was worth a mere $2,226.41, a loss of 99.9% of its value. Defendants provided no explanation or discussion over the fact that more than $3,161,000 had been taken or lost in a matter of months.

54.     The other four Rothstein suffered the same fate at the hands of Preis and the Bright Lake defendants. By June 2015, Michael Rothstein's personal account (Rothstein Account 1) was valued by Maitland at $791.72, Michelle Sara's account (Rothstein Account 3) was valued at $2,007.14, a Rebecca's account (Rothstein Account 4) was valued at $1,956.88, and the Sibling Account (Rothstein Account 5) was worth $204.87.

C.     <u>MAY 2015 CORRESPONDENCE</u>.

55.     In or about May 2015, Preis sent Michael Rothstein four letters, which were addressed either to Michael Rothstein, or to "investors." (*See* May 10, 2015 Preis Ltr, attached herein as "**Exhibit 3**," May Ltr No. 1 to M. Rothstein, attached herein as "**Exhibit 4**," and May Ltr No. 2 to M. Rothstein, attached herein as "**Exhibit 5**," May Ltr No. 3 to M. Rothstein, attached herein as "**Exhibit 6**.") Hal Sitt and Martin Rothstein did not receive any of these letters.

12

56.     The May 2015 letters did not provide any substantive information, repeating only that Bright Lake's sudden decrease in net asset value was attributable to the third-party.

57.     In June and July 2015, Michael Rothstein and Hal Sitt each made several attempts to contact Preis directly, going to the Bright Lake office at 1729 East 12th Street, and by telephone. Preis avoided their contacts, and refused to provide details of the losses or the status of the account, other than that he was working with New York lawyers, Kaiser Sauborn & Mair, to retrieve the Bright Lake funds from a third party who had "frozen" the accounts.

58.     On July 25, 2015, Preis sent Michael Rothstein a rambling incoherent text message in which he refused to respond to Michael's many inquiries for information about the accounts. In the July 25 text message, Preis warns Michael not to try to contact him and states that the Bright Lake office at 1729 12th Street "is closed officially until further [notice]."

<u>FIRST CAUSE OF ACTION</u>
(Fraud)

59.     Plaintiffs repeat and reallege paragraphs 1 through 58 above, as if fully set forth herein.

60.     Preis, acting on behalf of Bright L.P., and Bright Lake Management LLC, and the other defendants made false statements to Hal Sitt, Michael Rothstein and Martin Rothstein about the formation, purpose, investments and operation of the Bright Lake L.P. "hedge fund" that he used to take possession of the plaintiffs' assets, including that he was competent to open a hedge fund, that he was supported by advisors and others, that the hedge fund was closely affiliated with Well Fargo Securities, that the hedge fund had more than $50 million in assets under management and that he had a team in place to make appropriate investments on behalf the partners in the fund.

61.     Preis also forged documents and otherwise mislead or tricked the plaintiffs into transferring their assets to the defendants. In the case of the Rothstein Accounts 3 & 4, Preis was specifically

13

instructed not to deposit the checks for money belonging to Michelle Sara and Rebecca Rothstein into the Bright Lake fund, and Preis told Michael Rothstein that he would return the checks. Instead, Preis ignored the instruction and his promise to Michael Rothstein and deposited the checks into Bright Lake. Preis took advantage of the elderly plaintiffs, all of whom were retired and without current income, by befriending them and luring them into his confidence, knowing that they were unfamiliar with the risks of making an investment in a hedge fund, especially one that was run by a single manager, Preis, without any actual experience or support.

62.   It appears that Bright Lake L.P. made no investments, but plaintiffs' funds were instead Preis and the other defendants took possession of the plaintiffs' funds. The entire operation of the Bright Lake L.P. fund was fraudulent. Preis was not investing the plaintiffs' funds in order to increase, or even maintain their value, but instead used the fund as a vehicle to take control and convert the plaintiffs' assets.

63.   Preis and the defendants then continued to misrepresent that the Net Asset Value of the plaintiffs' interests in the Bright Lake L.P. fund, by propagating false information to the plaintiffs, both through correspondences and through information provided to Admiral/Maitland, misleading the plaintiffs as to the status of their investments. Preis and the defendants misrepresented that the plaintiffs' funds were competently invested, that the accounts were increasing in value, and then misrepresented to the plaintiffs that the fund had lost value because certain assets were frozen by non-party entities for reasons not explained.

64.   The plaintiffs relied upon the information provided to them by Preis, which appeared to have been vetted through Wells Fargo Prime Services, JP Morgan Clearing Corp. The true activity of the Bright Lake fund was concealed from the plaintiffs, and remains concealed.

65.   Preis and the defendants intentionally mislead the plaintiffs for the purpose of taking

14

unlawful possession of their funds and assets, and concealing these acts.

66.    Due to their reliance on the defendants' fraudulent scheme, the plaintiffs suffered losses, due to this fraudulent conduct, of more than $8.6 million dollars, which for most of the plaintiffs was approximately 99% of their investment lost in a single year.

67.    Defendants are liable to the plaintiffs for their full losses, the precise amount believed to be greater than $8.7 million, but to be determined by the court, plus interest and all reasonable expenses, attorney's fees and costs, and for punitive damages.

SECOND CAUSE OF ACTION
(Conversion)

68.    Plaintiffs repeat and reallege paragraphs 1 through 67 above, as if fully set forth herein.

69.    Defendants have taken possession of the plaintiffs' invested assets without authority, to do so and without notice that the defendants had taken possession of these assets, misleading the plaintiffs to believe that some non-party is responsible for the loss of assets.  Defendants have deprived and have interfered with the plaintiffs right to possess their property. Defendants intend to keep possession and control of these assets against the interests of the plaintiffs.

70.    Preis continued to misrepresent that the Net Asset Value of the plaintiffs' interests in the Bright Lake L.P. fund, by propagating false information to the plaintiffs, both through correspondences and through information provided to Admiral/Maitland, misleading the plaintiffs as to the status of their investments.

71.    Plaintiffs have demanded the return of their assets and defendants have refused to return the assets.

72.    Upon information and belief, the defendants continue to maintain control over the plaintiffs' assets.

73.    The plaintiffs relied upon the information provided to them by Preis, which appeared to

15

have been vetted through Wells Fargo Prime Services, JP Morgan Clearing Corp. The true activity of the Bright Lake fund was concealed from the plaintiffs, and remains concealed.

74.    Preis and the defendants intentionally mislead the plaintiffs for the purpose of taking unlawful possession of their funds and assets without the plaintiffs knowing.

75.    Due to their reliance on the defendants' fraudulent scheme, the plaintiffs suffered losses, due to this fraudulent conduct, of more than $8.6 million dollars, which for most of the plaintiffs was approximately 99% of their investment lost in a single year.

76.    Defendants are liable to the plaintiffs for their full losses, plus interest and litigation expenses, including attorney's fees and costs, and for punitive damages.

### THIRD CAUSE OF ACTION
(Breach of Fiduciary Duty)

77.    Plaintiffs repeat and reallege paragraphs 1 through 76 above, as if fully set forth herein.

78.    Defendants Preis, Bright Lake L.P. and Bright Lake Management LLC (the "Fiduciary Defendants"), entered into a fiduciary relationship with plaintiffs who have entrusted with their life savings and personal assets with these defendants. Preis and the Fiduciary Defendants promised to manage the plaintiffs' assets competently. The Fiduciary Defendants owe duties of disclosure, loyalty, care and good faith to the plaintiffs.

79.    The Fiduciary Defendants have breached their duties of truthful disclosure, loyalty, care and good faith, in several ways that have led to a loss of more than $8.6 million dollars in the course of a single year.

80.    Upon information and belief, the Fiduciary Defendants have concealed information from the plaintiffs about the nature of their investments, and about the NAV and status of their investments throughout the course of 2014 and 2015. The Fiduciary Defendants have mislead the plaintiffs into believing that Bright Lake L.P. was a legitimate investment vehicle, and that Ilan

16

Preis had the competence to operate such a fund, when he did not have that competence, nor did he intend to do make legitimate investments.

81.   Instead, Ilan Preis, acting on his own behalf and on behalf of Bright Lake L.P. and Bright Lake Management LLC, sought only to take possession of the plaintiffs' money for his own use, and to fool the plaintiffs into believe that ordinary investment risks had caused their loss. This was a simple fraud perpetrated by a person who developed personal relationships with the plaintiffs to gain their trust before betraying them.

82.   Preis led the plaintiffs to believe that he was associated with Wells Fargo and that the Bright Lake L.P. fund was run through Wells Fargo, and that it was a fund comprised of many investors, with assets under management of more than $50 million.  In fact, Preis only took the plaintiffs' money, and the money of two or three other smaller investors, for a total assets under management of no more than $10 million, $9.7 of which coming from the plaintiffs.

83.   Preis then provided false information through Admiral/Maitland to indicate to the plaintiffs, at least until about March 2015, that their investments were secure and making steady gains. Upon information and belief, this was false and there were no such investments or gains.

84.   Upon information and belief, beginning in about March 2015 through to May 2015, Preis began transferring the plaintiffs' funds out of the Bright Lake L.P. account into his personal accounts or other accounts controlled by him. Preis and the other two Fiduciary Defendants were acting in their own interests against the interests of the plaintiffs.

85.   The Fiduciary Defendants are liable to the plaintiffs for their full losses, plus interest and all reasonable expenses associated with this litigation, including attorney's fees and costs, and for punitive damages.

FOURTH CAUSE OF ACTION
(Aiding and Abetting Breach of Fiduciary Duty)

17

86.    Plaintiffs repeat and reallege paragraphs 1 through 85 above, as if fully set forth herein.

87.    Upon information and belief, the Fiduciary Defendants fully owned and controlled defendants Bright Lake Investment Services Limited Liability Company ("BLIS"), Bright Lake Fund Limited Partnership ("BLF"), Bright Lake Capital LLC ("BLC"), and Bright Lake Advisors LLC ("BLA") (together the "Aiding Defendants"), and used the Aiding Defendants to facilitate the fraud perpetrated by the Fiduciary Defendants.

88.    Upon information and belief, the Aiding Defendants, which were operated and controlled by Ilan Preis, knew specifically of the fraud perpetrated by Fiduciary Defendants, and aided that fraud by establishing their own securities trading accounts and bank accounts for the purpose of accepting the plaintiffs' funds transferred by the Fiduciary Defendants into the possession of Aiding Defendants. These funds were then taken directly by Ilan Preis for his own gain.

89.    Upon information and belief, the Aiding Defendants may have purported to provide services to the Fiduciary Defendants that were then billed to Bright Lake L.P. as operational or special costs.

90.    Upon information and belief, the Aiding Defendants may also have been established to demonstrate to trading partners, or to other parties, that the Fiduciary Defendants have sufficient organization to enable Bright Lake L.P. to operate as a hedge fund.

91.    The Aiding Defendants were aware that the Fiduciary Defendants had a fiduciary responsibility to the plaintiffs, that the Fiduciary Defendants were breaching those duties, and that the Aiding Defendants were assisting the Fiduciary Defendants in breaching those duties.

92.    The Aiding Defendants are liable to the plaintiffs for their full losses, interest and  litigation expenses, including attorney's fees and costs, and for punitive damages.

18

## FIFTH CAUSE OF ACTION
(Unjust Enrichment)

93.    Plaintiffs repeat and reallege paragraphs 1 through 92 above, as if fully set forth herein.

94.    The defendants were enriched by the property and assets that rightfully belong to the plaintiffs. Defendants took possession of approximately $8.6 million of the plaintiffs' money.

95.    Equity and good conscience require that the defendants be disgorged of all assets that were invested by the plaintiffs that remain in their possession, or any assets in possession of the defendants that were acquired, either in part or in whole, through the use of the plaintiffs' assets.

96.    The defendants are liable to the plaintiffs for their full losses, and must be disgorged of all assets belonging to plaintiffs, or were acquired as the proceeds of the plaintiffs' assets.

## SIXTH CAUSE OF ACTION
(Breach of Contract)

97.    Plaintiffs repeat and reallege paragraphs 1 through 96 above, as if fully set forth herein.

98.    To the extent that some plaintiffs agreed to provide Bright Lake L.P. with investment in the hedge fund, Bright Lake L.P. was obligated to make and maintain those investments according to the promises made to the plaintiffs.

99.    Bright Lake L.P. did not make those investments as promised, followed no investment strategy, and to the extent that Bright Lake L.P. was prevented from making investments, did not meet its obligations under the agreements with the plaintiffs to return the funds to the plaintiffs.

100.   Bright Lake is liable to the plaintiffs for their full losses, plus interest and all reasonable expenses associated with this litigation, including attorney's fees and costs.

19

## DEMAND FOR RELIEF

WHEREFORE, plaintiffs demand judgment against the defendants as follows:

(a)     awarding plaintiff $8.7 million, or some greater amount of compensation for the actual amount of investment funds that were lost to be determined at trial, based on defendants breach of contract, fraud, unjust enrichment, and conversion;

(b)     awarding attorneys' fees, costs, and disbursements in prosecuting this action to the extent permitted by law;

(c)     punitive damages in the amount of $10 million; and

(c)     awarding such other and further relief as this Court deems just and proper.

Dated: New York, New York
      April 4, 2016

MANGAN GINSBERG LLP

By: Michael P. Mangan
*Attorneys for Plaintiffs*
80 Maiden Lane, Suite 304
New York, New York 10038
Phone (212) 248-2170

20

Exhibit "B"

FILED: KINGS COUNTY CLERK 01/26/2018

NYSCEF DOC. NO. 74

INDEX NO. 505078/2016

RECEIVED NYSCEF: 01/29/2018

Case 1:21-cv-01401-RER-PK   Document 1-1   Filed 11/11/19   Page 23 of 30 PageID #: 37

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

-------------------------------------------------------------------------x

HAL SITT, MICHAEL ROTHSTEIN, MARTIN
ROTHSTEIN, HELEN ROTHSTEIN, HY S.
ROTHSTEIN, RENE ROTHSTEIN-RUBIN, MICHELLE            Index No.: 505078/2016
SARA ROTHSTEIN and REBECCA ROTHSTEIN,

                                                    AMENDED
                                                    DECISION/ORDER

                            *Plaintiff(s)*,

            -against-

ILAN PREIS, BRIGHT LAKE, L.P., BRIGHT LAKE
MANAGEMENT LLC, BRIGHT LAKE INVESTMENT
SERVICES LIMITED LIABILITY COMPANY,
BRIGHT LAKE FUND LIMITED PARTNERSHIP,
BRIGHT LAKE CAPITAL LLC, BRIGHT LAKE
ADVISORS, LLC,

                            *Defendant(s)*.

-------------------------------------------------------------------------x

HON. LEON RUCHELSMAN

Recitation, as required by CPLR 2219(a), of the papers considered in the review of this motion
are as follows:

        Notice of Motion and Affirmation in Support .......................Motion #2
        Exhibit(s)...................................................................1-4

Plaintiffs' Motion for an Order pursuant to CPLR 3215, for default judgment against

Defendants, BRIGHT LAKE, L.P, BRIGHT LAKE MANAGEMENT LLC, BRIGHT LAKE

INVESTMENT SERVICES LIMITED LIABILITY COMPANY, BRIGHT LAKE FUND

LIMITED PARTNERSHIP, BRIGHT LAKE CAPITAL LLC, BRIGHT LAKE ADVISORS,

LLC, (the "Bright Lake" defendants) is granted without opposition as Defendants have failed to

answer or otherwise appear in the within action and the time to do so has expired. Accordingly, it

is hereby:

2018 JAN 26 AM 9: 16

KINGS COUNTY CLERK FILED

ORDERED that after Plaintiffs' file their Affidavits of service, pursuant to this Court's

Decision/Order on Motion #3, Plaintiffs' are permitted to submit a proposed judgment and the

Clerk is directed to enter judgment in favor of the Plaintiffs, against above Bright Lake

Defendants, jointly and severally, as follows

1. Damages in the amount of $9,000,000 and

2. interest from June 15, 2015, to be calculated by the clerk and

3. costs and disbursements.

Dated: 1-23-18

Enter: _____

J.S.C.

HON. LEON RUCHELSMAN

2018 JAN 26 AM 8: 16

KINGS COUNTY CLERK
FILED

Exhibit "C"

FINRA DISPUTE RESOLUTION

| | |
|---|---|
| HAL SITT, MICHAEL ROTHSTEIN, MARTIN ROTHSTEIN, HELEN ROTHSTEIN, MICHELLE SARA ROTHSTEIN and REBECCA ROTHSTEIN, | **FINRA CASE** No. 17-01773 |
| Claimants, | |
| v. | |
| WELLS FARGO PRIME SERVICES LLC, WELLS FARGO ADVISORS FINANCIAL NETWORK, LLC, WELLS FARGO CLEARING SERVICES, LLC, FIRST CLEARING LLC, WELLS FARGO SECURITIES LLC, J.P. MORGAN CLEARING CORP., MIKHAIL FILSHTINSKIY, CARLOS G. MEJIA and STEVEN MATTHEW KAVALL, | |
| Respondents. | |

## STIPULATION OF CONFIDENTIALITY
## FOR THE PRODUCTION AND EXCHANGE OF DOCUMENTS

IT IS HEREBY STIPULATED AND AGREED, by the undersigned counsel for the parties, that the parties to this arbitration (the "Parties") agree to be bound by the following:

1)     The producing Party may designate documents produced by it/him/her to the other, which the producing Party in good faith believes contains proprietary or confidential business or financial information and/or non-public information of a sensitive, personal, and private nature, as "Confidential."

2)     All documents produced, and copies thereof, and all information obtained through discovery in this arbitration designated as "Confidential" (hereafter referred to as "Confidential

Documents") shall be used only for the purposes of preparing for, and conducting, this arbitration and any proceedings to confirm the award, vacate the award, or otherwise related to this proceeding, as provided in this Stipulation of Confidentiality.

3)      Except as provided for in Paragraph 4 below, access to any Confidential Document shall be restricted to: (a) the Parties to this arbitration; (b) counsel of record for the Parties to this arbitration, including those counsels' clerical, paralegal, and secretarial staff who need to review the Confidential Documents in connection with this arbitration and/or any court proceedings related to this arbitration; (c) the Arbitrators empaneled to hear this Arbitration (the "Arbitrators"); (d) the FINRA arbitration staff; (e) any arbitration witnesses or potential witnesses whose testimony or potential testimony relates to the Confidential Documents, provided such witness or potential witness has access to only those Confidential Documents pertinent to his/her testimony or potential testimony, whether or not such potential witness shall subsequently testify; (f) any experts, accountants or other third parties retained or employed by counsel for the Parties to assist in the preparation of this arbitration and/or any court proceeding related to this arbitration, whether or not such third parties shall subsequently testify; (g) any court reviewing the matter raised in this arbitration; (h) court reporters employed in connection with the proceedings in this matter; and, (i) any other person who the Parties agree in writing to allow access to such Confidential Documents.

4)      Neither the Confidential Documents nor their contents shall be shown, imparted, described or related to any other person, other than as provided in Paragraph 3, without prior written approval of counsel for the Party who produced the document or the approval of the Arbitrators.

5)      Nothing in this Stipulation of Confidentiality shall be deemed to preclude any Party from objecting to Requests for Documents and Information.

6)      The Parties agree that: (a) at the conclusion of the hearing copies of all Confidential Documents which have not been introduced into evidence; and, (b) after the conclusion of the hearing, the rendering of an award by the Arbitration Panel or other final resolution, and any proceedings to confirm the award, vacate the award, or otherwise related to this proceeding, all copies of all Confidential Documents which have been introduced into evidence at the hearing in this matter, and all documents reflecting the same, shall be returned to counsel for the producing Party or destroyed. EXCEPT that, counsel may retain such documents for the statute of limitations period for malpractice, and then destroy the documents after the limitations period has expired.

7)      The producing Party may request, without objection from the other Party, that no copy of the records designated as confidential pursuant to this stipulation be retained by FINRA Department of Dispute Resolution and the Arbitration Panel selected to hear this proceeding. All briefs, pleadings or other filings by counsel for the non-producing Parties that incorporate, disclose, or refer to documents provided by the producing Party pursuant to the terms of this Stipulation of Confidentiality shall be retained by counsel for the non-producing Party, but shall otherwise remain subject to and shall be maintained in strict compliance with the provisions of this Stipulation of Confidentiality.

8)      Unless disclosure of documents is ordered by any court or law enforcement authority or otherwise required by any regulatory agency, self-regulatory agency or law, should any Confidential Document provided by a Party, or the information contained therein, be disclosed, released or utilized by a non-producing Party and/or their counsel for any purpose in violation of the terms of this Stipulation of Confidentiality, the violating Party will be responsible for any and all damages that result from the breach of the terms of this Stipulation of Confidentiality.

9)        Nothing herein is intended, or shall be construed, to limit in any way the right of the producing Party to, in their sole discretion, use or disclose the documents produced by that Party in any manner for any reason. Nor is it intended to prohibit or restrict a customer or any other person from communicating with (either directly or in response to an inquiry from) the Securities and Exchange Commission (SEC), FINRA, or any federal or state regulatory authority regarding a possible securities law violation. Nor is it intended to prohibit any party from sharing the documents designated confidential pursuant to this stipulation with regulatory or self-regulatory authorities.

10)       Nothing in this Stipulation of Confidentiality shall be deemed to preclude counsel from moving the Arbitrators, or a court of competent jurisdiction, for an Order determining that documents designated Confidential are not appropriately governed by the terms of this Stipulation, and are therefore, not entitled to confidential treatment. In any such proceeding, the producing Party has the burden of supporting its confidential designation. However, prior to such a determination by the Arbitrators or the court, all documents designated as confidential shall be treated as confidential pursuant to this Stipulation. The non-designating Party shall not waive any challenge to a designation by failing to immediately assert such challenge and shall not be required to assert a challenge within a particular timeframe.

11)       The inadvertent or unintentional disclosure by the producing Party of confidential information, or information subject to a claim of privilege, regardless of whether the information was so designated at the time of disclosure, shall not be deemed a waiver, in whole or in part, of a party's claim of confidentiality or privilege.

12)       This Stipulation of Confidentiality and order may be modified by later agreement in writing by the parties.

Dated: ~~June~~ July 11, 2018

Sandra Grannum Th

Sandra D. Grannum, Esq.
**Drinker Biddle & Reath LLP**
600 Campus Drive
Florham Park, NJ 07932
(973) 549-7015 *phone*
(973) 360-9831 *fax*
Sandra.Grannum@dbr.com
*Counsel for Wells Fargo Securities, LLC,*
*Wells Fargo Prime Services, LLC,*
*Wells Fargo Clearing Services, LLC d/b/a*
*Wells Fargo Advisors, Wells Fargo Financial*
*Network, LLC, J.P. Morgan*
*Clearing Corp. (n/k/a J. P. Morgan*
*Securities LLC) and Steven Matthew*
*Kavall*

Dated: ~~June~~ July 9, 2018

Mr. Michael P. Mangan, Esq.
**Mangan Ginsberg LLP**
80 Maiden Lane
Suite 304
New York, New York 10038
(212) 248-2170 *phone*
mpm@mangan-ginsberg.com
*Counsel for Claimants*

Mr. Kevin J. Deloatch, Esq.
**The Law Office of Kevin J. Deloatch**
115 East 57th Street FL 11
New York, New York 10022
646-792-2156 *phone*
212-994-1003 *fax*
kdeloatch@deloatchlaw.com
*Counsel for Carlos Mejia*
Dated: July 16, 2018

Mr. Benjamin J. Biard, Esq.
**Winget Spadafora Schwartzberg, LLP**
14 NE 1st Avenue
Suite 600
Miami, Florida 33132
305-830-0600 *phone*
305-830-0601 *fax*
biard.b@wssllp.com
*Counsel for Mikhail Filshtinskiy*

Dated: July 13, 2018

Rene Rothstein Rob, J AD
434 N. Highland Ave
Merion Station
PA 19066
610 6084528