IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RENE ROTHSTEIN RUBIN, | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | No. 19-5301 |
| v. | : | |
| | : | |
| MICHAEL P. MANGAN, ESQ., | : | |
| MANGAN & GINSBERG LLP, and | : | |
| MICHAEL ROTHSTEIN, | : | |
|     Defendants. | : | |

February 17, 2021                                                                                                               Anita B. Brody, J.

## **MEMORANDUM**

Plaintiff Rene Rothstein Rubin ("Rubin") brings suit against her brother Michael Rothstein ("Rothstein") as well as Michael Mangan, Esq. and his law firm Mangan & Ginsberg LLP (collectively, the "Mangan Defendants"). Rubin alleges that Rothstein breached his fiduciary duties and that the Mangan Defendants committed legal malpractice in connection with a now worthless investment made with funds from a joint account that Rubin shared with her siblings.

Before me are two motions to dismiss. Rothstein moves to dismiss for lack of personal jurisdiction and improper venue. Mot. to Dismiss for Lack of Personal Jurisdiction & Improper Venue, ECF No. 38 ("Rothstein Mot. to Dismiss"). The Mangan Defendants move to dismiss for lack of subject matter jurisdiction, lack of personal jurisdiction, improper venue, and failure to state a claim. Mot. to Dismiss Pl.'s Am. Compl., ECF No. 39 ("Mangan Mot. to Dismiss").

For the reasons discussed below, I will deny the Mangan Defendants' motion to dismiss for lack of subject matter jurisdiction. I will transfer this case to the Eastern District of New York because venue is improper in this district.

## I.     BACKGROUND[1]

Rubin lives in Pennsylvania. Am. Compl. ¶ 2, ECF No. 34. Rubin's younger brother Rothstein lives in New York. *Id.* ¶ 5. Rubin, Rothstein, and another sibling maintained a joint account ("Joint Sibling Account") at the Stifel, Nicolaus & Company, Inc. ("Stifel"), a brokerage and investment banking firm. *Id.* ¶ 13. Rubin maintained $80,000 to $100,000 of her personal funds in the Joint Sibling Account. *Id.* ¶ 13. Rothstein was listed as the "Primary Owner" of the Joint Sibling Account and was supposed to be "the conduit between the broker (Stifel) and his siblings." *Id.* ¶ 34. Nonetheless, Stifel required the signatures of all three account holders to make any changes to the Joint Sibling Account. *Id.* ¶ 53.

From 2013 to 2014, Rothstein decided to invest funds from the Joint Sibling Account in Bright Lake L.P. *Id.* ¶¶ 34-36. Rothstein believed that Bright Lake was a New York hedge fund that was affiliated with Wells Fargo and run by his long-time friend Ilan Preis. *Id.* ¶ 12, Ex. A. As such, Rothstein, who asserted that he "had authority over [the Joint Sibling Account]," decided to invest $200,000 from the Joint Sibling Account in Bright Lake. *Id.* ¶ 36, Ex. A. This money included the $80,000 to $100,000 in personal funds that Rubin maintained in the Joint Sibling Account. *Id.* ¶ 13. Rothstein neither informed Rubin of the investment nor obtained her consent. *Id.* ¶ 13.

---

[1] All facts are taken from the Amended Complaint (ECF No. 34) and the exhibits attached to the Amended Complaint. The facts are presented in the light most favorable to Rubin, the nonmoving party. *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 356 n.12, 358 (3d Cir. 2014); *Heft v. AAI Corp.*, 355 F. Supp. 2d 757, 762 (M.D. Pa. 2005) (citing *Myers v. Am. Dental Ass'n*, 695 F.2d 716, 724 (3d Cir. 1982)). I use ECF page numbers throughout.

To effectuate this investment, in August 2013, Wells Fargo—from a location in Brooklyn, New York—sent Stifel a form purporting to authorize the transfer of the entire Joint Sibling Account from Stifel to Wells Fargo, where it presumably would be controlled by Preis. *Id.* ¶ 30, Ex. D. Because Stifel required the signatures of all joint account holders to make changes to the Joint Sibling Account, the form authorizing the transfer contained a signature that was allegedly Rubin's. *Id.* ¶¶ 31-33, 53. Rubin's signature on the form was forged and differed drastically from her true signature. *Id.* ¶¶ 31-33. As Rubin's brother and a joint account holder, Rothstein was aware that the signature on the form differed from Rubin's actual signature. *Id.* ¶ 55. Rothstein—at a minimum—failed to verify Rubin's signature on the form and allowed the forged signature to be transmitted to Stifel. *Id.* As a result, the Joint Sibling Account was transferred from Stifel to Wells Fargo. *Id.* ¶ 30, Ex. D.

Then, in May 2014, Rothstein took it upon himself to authorize the transfer of $200,000 from the Joint Sibling Account—now held at Wells Fargo—to Bright Lake. *Id.* ¶¶ 36, 37, Ex. E1.

Around July 2015, Rothstein learned that Preis lost 99% of the investment in Bright Lake. *Id.* ¶ 14. At this point, Rubin was still unaware of the investment in Bright Lake let alone the subsequent loss in value of the investment. *Id.* ¶¶ 19-20.

As a result of the loss, on April 15, 2016, the Mangan Defendants filed a lawsuit against Bright Lake and Preis in the Kings County Supreme Court in New York (the "Bright Lake lawsuit"). *Id.* ¶¶ 15-17. The plaintiffs named in the lawsuit included Rubin, Rothstein, and several of their family members who had also invested in Bright Lake. *Id.* Rubin had not authorized the Mangan Defendants to represent her in the lawsuit and was unaware that the lawsuit had been filed. *Id.* ¶ 18. In fact, at the time of filing, Rubin was still unaware that

Rothstein had authorized the investment from the Joint Sibling Account in Bright Lake. *Id.* In January 2018, a default judgment was entered against Bright Lake and Preis. *Id.* ¶ 21. Because Preis could not be located, the default judgment remains unlikely to result in the return of the invested funds. *Id.* ¶ 22.

Rubin first learned of the Bright Lake lawsuit in December 2018. *Id.* ¶ 23. Rubin immediately reached out to Mangan, who was listed on the pleadings as the attorney for the plaintiffs, to inquire about the lawsuit and the status of the invested funds. *Id.* On January 23, 2019, Rubin and Mangan spoke on the phone about the Bright Lake lawsuit. *Id.* ¶ 24. The same day, Mangan emailed Rubin to follow up on the call. *Id.* He stated: "It was good speaking with you this morning concerning the Bright Lake cases. . . . Please reach out to me with any questions or requests for documents at this email address, or to the business address below." *Id.* at Ex. B1. On January 26, 2019, Rubin responded:

> I know this must be difficult for you
> but I entreat you to please contact me asap
> I want to help my parents [who also invested in Bright Lake and were plaintiffs in the Bright Lake lawsuit]
> I want their money restored, however small the chance is
> my brother is going to screw this up for you

*Id.* Mangan replied: "I will try to call tomorrow. If we don't connect on Sunday - I will call you tomorrow." *Id.* Based on these communications, Rubin concluded that Mangan was her attorney. *Id.* ¶ 24.

On March 22, 2019, Rubin contacted Mangan again and asked to meet in person. *Id.* at Ex. B1. She emailed:

> nice speaking to you
> when can we meet?
> I can come to nyc late afternoons or early evenings
> I can be very helpful in this matter.

*Id.* Rubin and Mangan subsequently met in person at a restaurant in Penn Station in New York to discuss the Bright Lake lawsuit. *Id.* ¶¶ 25-26. During the meeting, Rubin informed Mangan of her shock upon finding out that she was a named plaintiff in the Bright Lake lawsuit since she had never consented to being a plaintiff in the case. *Id.* ¶ 26. Mangan told Rubin that since Preis had likely absconded with the invested funds and was unlikely to be found, Mangan had brought a separate FINRA arbitration against Wells Fargo (the "Wells Fargo arbitration") to recover some of the funds. *Id.* Mangan told Rubin that she had not been included in the Wells Fargo arbitration, but he promised to "add her" to the arbitration. *Id.* He further told Rubin that even if he did not formally "add her" to the arbitration, he would make sure that she was party to any settlement or payout that resulted from the arbitration. *Id.*

After the Penn Station meeting in March 2019, Rubin tried to contact Mangan several times. *Id.* ¶ 27. Mangan did not respond. *Id.* Nor did he add Rubin to the Wells Fargo arbitration. *Id.*

In July 2019, the Wells Fargo arbitration settled. *Id.* Mangan did not inform Rubin of the settlement. *Id.* ¶ 29.

Later in July, after receiving no response from Mangan since March, Rubin threatened to report Mangan to the New York Disciplinary Board. *Id.* ¶ 27. Only then did Mangan call Rubin back. *Id.* On the call, Mangan did not inform Rubin that the Wells Fargo arbitration had already settled earlier that month. *Id.* ¶¶ 27, 29. Instead, Mangan again promised that he would "add" Rubin to the Wells Fargo arbitration. *Id.* ¶ 28. On July 18, 2019, Mangan emailed Rubin the Stipulation of Confidentiality filed in the Wells Fargo arbitration. *Id.* ¶ 28, Ex. C. Mangan told Rubin to add her name and signature to the end of the document. *Id.* ¶ 28. Mangan represented to Rubin that by doing so, Rubin would be "added" to the Wells Fargo arbitration and would be

represented by Mangan in the next phase of the proceedings. *Id.* Without knowing that the Wells Fargo arbitration had already settled earlier that month, Rubin added her name and signature to the Stipulation of Confidentiality. *Id.* ¶¶ 28, 29, Ex. C.

After she added her name and signature to the Stipulation, Rubin had trouble contacting Mangan regarding the Wells Fargo arbitration. *Id.* ¶ 29 & n.2. Rubin then contacted the attorney for Wells Fargo who was listed in the Stipulation. *Id.* The attorney for Wells Fargo informed Rubin that the Well Fargo arbitration had already settled and advised Rubin to contact her own attorney. *Id.*

On October 7, 2019, Rubin contacted Mangan and requested her file. *Id.* ¶ 40, Ex. F. Mangan did not send Rubin her file. *Id.* ¶ 42.

On November 11, 2019, Rubin filed this lawsuit in the Eastern District of Pennsylvania. Rothstein and the Mangan Defendants filed motions to dismiss.

## II. DISCUSSION

Before me are motions to dismiss for lack of subject matter jurisdiction, lack of personal jurisdiction, improper venue, and failure to state a claim.

I will begin by addressing the procedural issues. Because the question of whether I have subject matter jurisdiction is "fundamentally preliminary,"[2] I will address subject matter jurisdiction first. *Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979), *superseded by statute on other grounds*. After establishing that I have subject matter jurisdiction, I will turn

---

[2] As discussed below, I will transfer the action for improper venue under 28 U.S.C. § 1406(a). I must have subject matter jurisdiction to do so. *Fitzgerald v. Vogel*, No. 02-7849, 2003 WL 203562, at *1 (E.D. Pa. Jan. 29, 2003); 14D Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3827 (4th ed., rev. 2020). *But cf. In re Howmedica Osteonics Corp.*, 867 F.3d 390, 404 n.8 (3d Cir. 2017) (allowing courts without subject matter jurisdiction to transfer venue under 28 U.S.C. § 1404(a) when venue is proper in the transferring court).

directly to venue without addressing personal jurisdiction because even if personal jurisdiction existed, venue would still be improper in this district.[3]

### A. Subject Matter Jurisdiction

Rubin filed this action in federal court, invoking diversity jurisdiction under 28 U.S.C. § 1332. A district court exercises diversity jurisdiction over an action "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states." 28 U.S.C. § 1332(a). The parties agree that they are citizens of different states.[4] Rothstein does not challenge subject matter jurisdiction. The Mangan Defendants challenge subject matter jurisdiction based on the amount in controversy.

The Mangan Defendants mount a facial attack because they contend that Rubin failed to plead sufficient facts to show that the amount in controversy requirement is met for Rubin's claims against them. Mangan Mot. to Dismiss 14-16; *Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) ("[A] facial attack concerns an alleged pleading deficiency whereas a factual attack concerns the actual failure of [a plaintiff's] claims to comport [factually] with the jurisdictional prerequisites" (internal quotation marks omitted) (alterations in original)). A court reviewing a facial attack "must only consider the allegations of the complaint and documents referenced therein and attached thereto." *Aichele*, 757 F.3d at 358. The court must accept as true the allegations contained in the complaint and construe the complaint in the light most favorable to the nonmoving party—here, Rubin. *Id.* at 356 n.12, 358.

When calculating the amount in controversy, the "sum claimed by the plaintiff controls if

---

[3] *See Leroy*, 443 U.S. at 180 (holding that though courts usually address personal jurisdiction before venue, courts may address venue before personal jurisdiction "when there is a sound prudential justification for doing so").

[4] For personal jurisdiction purposes, Rubin is a citizen of Pennsylvania and the defendants are all citizens of New York.

the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *Dardovitch v. Haltzman*, 190 F.3d 125, 135 (3d Cir. 1999) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938)). "[W]hether a plaintiff's claims pass the 'legal certainty' standard is a threshold matter that should involve the court in only minimal scrutiny of the plaintiff's claims." *Suber v. Chrysler Corp.*, 104 F.3d 578, 583 (3d Cir. 1997).

Viewing the complaint in the light most favorable to Rubin, it does not "appear to a legal certainty that [Rubin's] claim is really for less than [$75,000]."[5] *Dardovitch*, 190 F.3d at 135. Rubin alleges that she lost $80,000 to $100,000 of her personal funds as a result of the Bright Lake investment and that the Mangan Defendants' subsequent malpractice prevented her from recovering those funds. Am. Compl. ¶¶ 13, 45-46; Pl.'s Mem. of Law in Opp'n to Defs. Michael P. Mangan & Mangan & Ginsberg LLP's Mot. #39 (to Dismiss) 13-14, 23, ECF No. 41 ("Pl.'s Resp. to Mangan Defs."). After filing the Bright Lake lawsuit on Rubin's behalf without her knowledge or consent, the Mangan Defendants misled Rubin into believing that they represented her and would include her in their other efforts to recover the investment. Am. Compl. ¶¶ 15-18, 24-29, 45-46. Relying on these representations, Rubin did not attempt to recover the $80,000 to $100,000 herself by filing her own lawsuit. *Id.* ¶¶ 45-46; Pl.'s Resp. to Mangan Defs. 13-14, 23.

---

[5] I will assume that Rubin pleads distinct claims against each defendant and, thus, will analyze the amount in controversy separately for Rothstein and the Mangan Defendants.

Rothstein does not challenge the amount in controversy for Rubin's claim against him. There is no indication that the sum Rubin pled—$80,000 to $100,000—was not pled in good faith nor does it appear to a legal certainty that Rubin's claim against Rothstein is for less than $75,000. Rubin's claim against Rothstein meets the amount in controversy requirement.

As discussed below, Rubin's claims against the Mangan Defendants also meet the amount in controversy requirement. As such, I do not need to address whether the defendants are jointly liable such that I should "aggregate" the claims against them to determine the amount in controversy. *See Golden ex rel. Golden v. Golden*, 382 F.3d 348, 355 n.5 (3d Cir. 2004) (discussing the "aggregation" approach), *abrogated on other grounds by Marshall v. Marshall*, 547 U.S. 293 (2006).

The statute of limitations on Rubin's potential claims have likely run, and she cannot recover the $80,000 to $100,000 herself. Am. Compl. ¶¶ 45-46; Pl.'s Resp. to Mangan Defs. 13-14, 23. In addition to compensatory damages for this harm, Rubin may also be entitled to punitive damages.[6] Am. Compl. ¶¶ 46, 49; *see Huber v. Taylor*, 532 F.3d 237, 244 (3d Cir. 2008) ("If appropriately made, . . . claims for punitive damages will generally satisfy the amount in controversy requirement because it cannot be stated to a legal certainty that the value of the plaintiff's claim is below the statutory minimum." (internal quotation marks omitted) (emphasis omitted)).

As such, the amount in controversy requirement is met, and I exercise diversity jurisdiction under 28 U.S.C. § 1332.

**B. Venue**

In diversity cases, 28 U.S.C. § 1391(b) provides that venue is proper in:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

Rubin contends that venue is proper in the Eastern District of Pennsylvania because "a substantial part, if not all, of the services and communications were performed by the parties

---

[6] The two potential sources of law in this case are Pennsylvania and New York. Punitive damages for legal malpractice are available under the law of either state. *Zarin v. Reid & Priest*, 585 N.Y.S.2d 379, 388 (App. Div. 1992); *Rizzo v. Haines*, 555 A.2d 58, 69-70 (Pa. 1989).

within this District, and the matter in controversy primarily occurred to Plaintiff within this district and the injury was incurred in this district." Am. Compl. ¶ 11. As such, Rubin invokes § 1391(b)(2), which requires "a substantial part of the events or omissions giving rise to the claim" to have occurred in this district.[7] 28 U.S.C. § 1391(b)(2). The defendants disagree and move to dismiss for improper venue.

When deciding a motion to dismiss for improper venue, the court must "accept as true all of the allegations in the complaint, unless those allegations are contradicted by the defendants' affidavits." *Bockman v. First Am. Mktg. Corp.*, 459 F. App'x 157, 158 n.1 (3d Cir. 2012); *accord Heft*, 355 F. Supp. 2d at 762. The court may also consider documents that are "integral to or explicitly relied upon in the complaint," including "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). The defendants bear the burden of proving that venue is improper. *Myers*, 695 F.2d at 724.

Venue is proper under § 1391(b)(2) when "a substantial part of the events or omissions giving rise to the claim occurred" in the district. 28 U.S.C. § 1391(b)(2). "In assessing whether events or omissions giving rise to the claims are substantial, it is necessary to look at the nature of the dispute." *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 295 (3d Cir. 1994). "The test . . . is not the defendant's 'contacts' with a particular district, but rather the location of those 'events or omissions giving rise to the claim.'" *Id.* at 294. "Events or omissions that might only have some tangential connection with the dispute in litigation are not enough. Substantiality

---

[7] Venue cannot be established under § 1391(b)(1) because not all defendants reside in Pennsylvania. It is undisputed that Rothstein resides in New York.
Venue also cannot be established under § 1391(b)(3) because this action could have been brought in the Eastern District of New York.

is intended to preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute." *Id.*

1. ***Venue Is Improper as to Rothstein***

Rubin alleges that Rothstein breached his fiduciary duties because, as the "Primary Owner" on the Joint Sibling Account, he "consented to make investments in Bright Lake L.P. for this account"; failed to "maintain contact between [Stifel] and [Rubin] for all administrative matters"; and "failed to properly verify the signatures on the Account Transfer documents," "allowing the transmittance of [Rubin's] fraudulent, forged signature via facsimile from Wells Fargo to Stifel." Am. Compl. ¶¶ 51-56. As such, Rubin contends that venue is proper because Rothstein's "wrongful conduct, though occurring outside of the [Eastern District of Pennsylvania], produced injury to her *within this* [*district*]—particularly where [Rothstein] knew perfectly well when he committed the acts and omissions at issue that the harm would be incurred here." Pl.'s Mem. of Law in Opp'n to Def. Michael Rothstein's Mot. (#38) to Dismiss 15, ECF No. 40 ("Pl.'s Resp. to Rothstein").

The Third Circuit has "clearly rejected" the argument that mere economic harm in a district is sufficient to establish venue. *Loeb v. Bank of Am.*, 254 F. Supp. 2d 581, 587 (E.D. Pa. 2003) (Brody, J.). In *Cottman*, the Third Circuit found venue improper for breach of contract and trademark infringement claims because "though the result was . . . in Pennsylvania, the [acts or] omissions bringing about this result actually occurred in [another district]." 36 F.3d at 295. As such, "cases in this and other jurisdictions have held that where tortious conduct occurs in one jurisdiction, a mere effect of that conduct being felt in a second is not enough to support venue in that second jurisdiction." *Herbert v. Christiana Care Corp.*, No. 04-1984, 2004 WL 2554562, at *2 (E.D. Pa. Nov. 8, 2004). This reasoning applies with equal force to a claim for breach of

fiduciary duties like the one Rubin brings against Rothstein.[8] *See, e.g.*, *Manning v. Flannery*, No. 09-03190, 2010 WL 55295, at *11-12 (E.D. Pa. Jan. 6, 2010) (holding that venue for a breach of fiduciary duties claim was not established based solely on the fact that defendants intended plaintiff to feel the economic harm from the breach in the district and plaintiff did in fact feel the harm in the district).

As Rubin admits, the "wrongful conduct"—stated otherwise, the "events or omissions giving rise to the claim"—occurred outside of Pennsylvania. Pl.'s Resp. to Rothstein 15. Rothstein, a New York resident, was listed as the "Primary Owner" on the Joint Sibling Account that was maintained with Stifel. Am. Compl. ¶¶ 5, 34. Rothstein—at a minimum—failed to verify Rubin's signature on a form sent to Stifel from a Wells Fargo location in Brooklyn, New

---

[8] Rubin also argues that venue is proper in this district because Rothstein is subject to personal jurisdiction under the *Calder* effects test. Pl.'s Resp. to Rothstein 16. Personal jurisdiction exists under the *Calder* effects test when

(1) The defendant committed an intentional tort;
(2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort;
(3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.

*IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265-66 (3d Cir. 1998) (footnote omitted). Rubin supports her argument by citing to a line of cases where courts found venue was proper after finding personal jurisdiction under *Calder*. Pl.'s Resp. to Rothstein 16.

As an initial matter—even if personal jurisdiction over Rothstein existed under *Calder*—"[i]t would be error . . . to treat the venue statute's '*substantial* part' test as mirroring the *minimum* contacts test employed in personal jurisdiction inquiries." *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005) (emphasis added).

Moreover, the cases Rubin cites do not stand for the proposition that venue is automatically proper when personal jurisdiction exists under *Calder*. Rather, in the cited cases, the *specific nature* of the claims at issue resulted in "a substantial part of the events or omissions giving rise to the claim" occurring in the same place that the effects of the defendant's actions were felt. *Compare, e.g.*, *Walsh v. Alarm Sec. Grp., Inc.*, 157 F. Supp. 2d 501, 508-09 (E.D. Pa. 2001) (finding *Calder*-based personal jurisdiction and venue over a fraud claim arising from defendant's refusal to honor a contract to employ the plaintiff in the district), *with Stursberg v. Morrison Sund, PLLC*, No. 20-1635-KSM, 2020 WL 7319546, at *28, *47-53 (E.D. Pa. Dec. 11, 2020) (finding *Calder*-based personal jurisdiction over abuse of process and wrongful use of civil proceedings claims, but finding venue improper because the claims arose from a lawsuit filed outside the district).

York. *Id.* ¶¶ 31-33, 55. This form purportedly authorized the transfer of the Joint Sibling Account from Stifel to the Brooklyn Wells Fargo location. *Id.* ¶¶ 31-33, 55. Rothstein then decided—without Rubin's consent—to invest funds from the Joint Sibling Account in Bright Lake L.P., a New York company he believed to be a hedge fund. *Id.* ¶¶ 36-37, Ex. A. The mere fact that Rubin experienced the harm from these events in this district is insufficient to establish venue.

As such, venue is improper as to Rothstein.

### 2. *Venue Is Improper as to the Mangan Defendants*

Rubin alleges that the Mangan Defendants committed legal malpractice in connection with the Bright Lake lawsuit and Wells Fargo arbitration, causing Rubin to "los[e] her initial investments" and preventing her from "benefit[ting] from any settlement between plaintiffs and defendants in the Wells Fargo case." Am. Compl. ¶ 46. Specifically, Rubin alleges that Mangan represented Rubin in the Bright Lake lawsuit without her consent, then failed to communicate with Rubin about the progress in that lawsuit; misrepresented to Rubin that he would represent her in the Wells Fargo arbitration, then failed to communicate with Rubin about the progress and eventual settlement in that arbitration; generally failed to provide Rubin with any legal advice despite representing to her and the world that he was her lawyer; and failed to provide Rubin with her complete file after she requested it. *Id.* ¶¶ 43-46. Furthermore, Rubin alleges that Mangan & Ginsberg LLP is liable for Mangan's negligence under the doctrine of respondeat superior. *Id.* ¶¶ 48-49.

Rubin asserts that venue is proper as to the Mangan Defendants because a "substantial part, if not all, of the services and communications were performed by the parties within this District, and the matter in controversy primarily occurred to Plaintiff within this district and the

injury was incurred in this district."⁹ Am. Compl. ¶ 11.

Stated otherwise, Rubin relies on the following events or omissions to establish venue as to the Mangan Defendants: (1) legal services performed by the Mangan Defendants; (2) communications with Rubin, who resides in this district; and (3) injuries felt by Rubin in this district. Venue is improper based on these three events or omissions.

First, the legal services at issue were provided in New York in relation to New York legal proceedings. Mangan is a New York resident, practices law out of his firm's New York office, and is not licensed to practice law in Pennsylvania. Mangan Mot. to Dismiss, at Ex. A. Mangan's firm, Mangan & Ginsberg LLP, is registered in New York; has its principal executive office in New York; is not registered to do business in Pennsylvania and does not do business in Pennsylvania; and has no lawyers who are admitted to practice in Pennsylvania. *Id.* at Ex. B. Mangan's alleged malpractice arises from his actions in connection with the Bright Lake lawsuit and Wells Fargo arbitration. Am. Compl. ¶¶ 43-46. The Bright Lake lawsuit was filed—without Rubin's knowledge or consent—in the Kings County Supreme Court in New York. *Id.* ¶¶ 14-18, Ex. A. Likewise, the Wells Fargo arbitration was initiated in New York, and there is no indication that the arbitration involved any proceedings in Pennsylvania. *Id.* ¶ 26; Mangan Mot. to Dismiss 13. The only in-person meeting between Mangan and Rubin regarding the Bright Lake and Wells Fargo proceedings occurred in New York. Am. Compl. ¶¶ 25-26. Additionally, there are no allegations that Mangan was anywhere other than New York when he provided—or failed to provide—the services at issue. Thus, the alleged legal services—or lack thereof—giving rise to this malpractice claim do not support venue in the Eastern District of Pennsylvania.¹⁰

---

⁹ Rubin does not further address venue in her briefing. *See generally* Pl.'s Resp. to Mangan Defs.

¹⁰ *See, e.g.*, *Kerik v. Tacopina*, No. 14-488 (FSH), 2014 WL 1340038, at *4-5 (D.N.J. Apr. 3, 2014) (finding venue improper in the District of New Jersey when counsel completed the legal work in New

Second, the communications with Rubin, a district resident, are insufficient to establish venue. Rubin alleges that Mangan's email and phone communications contained misrepresentations that he would act as her attorney and omitted information about the progress of the Bright Lake and Wells Fargo actions. Am. Comp. ¶ 45. For venue purposes, "misrepresentations and omissions are deemed to occur in the district where they were transmitted or withheld, not where they are received." *Kerik*, 2014 WL 1340038, at *5.[11] There are no allegations that Mangan was located anywhere other than New York when he made the communications containing misrepresentations and omissions. Thus, Mangan's communications with Rubin also do not support venue in the Eastern District of Pennsylvania.

Third, the mere fact that Rubin experienced the harm in this district is insufficient to establish venue. As discussed above, in *Cottman*, the Third Circuit "clearly rejected" the argument that mere harm in a district is sufficient to establish venue. *Loeb*, 254 F. Supp. 2d at 587 (Brody, J.) (citing *Cottman*, 36 F.3d at 295); *see also Herbert*, 2004 WL 2554562, at *2 (collecting cases that reject this argument for malpractice claims). Though Rubin felt the harm from the alleged malpractice in Pennsylvania, the acts or omissions giving rise to the malpractice

---

York in relation to New York criminal proceedings, and the malpractice stemmed from counsel's alleged disclosure of privileged information to prosecutors in New York and misrepresentations made from counsel's New York office); *Lay v. Bumpass*, No. 3:11-cv-1543, 2012 WL 3260425, at *3 (M.D. Pa. Aug. 8, 2012) (finding venue improper in the Middle District of Pennsylvania when counsel did not solicit business in Pennsylvania, travel to Pennsylvania, practice law in Pennsylvania, or file the underlying action in Pennsylvania); *Henshell Corp. v. Childerston*, No. 99-2972, 1999 WL 549027, at *4 (E.D. Pa. July 28, 1999) (finding venue improper in the Eastern District of Pennsylvania when the alleged malpractice arose from counsel's failure to file documents, pay sanctions, and appear for court hearings in a Delaware lawsuit).

[11] *See also Archway Ins. Servs., LLC v. Harris*, No. 10-5867, 2011 WL 2415168, at *7 (E.D. Pa. June 15, 2011) (holding that, for venue purposes, the misrepresentation occurred where the defendant was located); *Bolus v. Morrison Homes, Inc.*, No. 07-1978, 2008 WL 4452658, at *4 (M.D. Pa. Sept. 30, 2008) (holding that, for venue purposes, the misrepresentation over the phone occurred where the defendant was located during the call); *Wojtunik v. Kealy*, No. 02-8410, 2003 WL 22006240, at *4 (E.D. Pa. Aug. 23, 2003) (holding that, for venue purposes, the misrepresentations in oral statements and publicly filed financial documents occurred where the defendant was located).

claim occurred in another district. Thus, Rubin's harm in the Eastern District of Pennsylvania does not support venue in this district.

As such, venue is improper as to the Mangan Defendants.

### 3. *Transfer to the Eastern District of New York Is Appropriate*

The Eastern District of Pennsylvania is not the proper venue for Rubin's claims against Rothstein and the Mangan Defendants. If venue is improper, a district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). A court may transfer in the interest of justice to avoid "penalizing [the plaintiff] by . . . time-consuming and justice-defeating technicalities." *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 467 (1962). The parties have not drawn my attention to any injustice that would result from transfer rather than dismissal. Accordingly, in the interest of justice, I will transfer this case to the Eastern District of New York, where the case could have been brought originally.[12]

                                                                                                       s/ANITA B. BRODY, J.

                                                                                                         ANITA B. BRODY, J.

**COPIES VIA ECF**

---

[12]     Venue is proper in the Eastern District of New York under 28 U.S.C. § 1391(b)(1) because all of the defendants reside in New York and Rothstein resides in the Eastern District of New York.

        Venue may also be proper under § 1391(b)(2) because "a substantial part of the events or omissions giving rise to the claim" occurred in the district: the document containing Rubin's forged signature was sent from a Wells Fargo location in the district, and the Mangan Defendants filed the Bright Lake suit without Rubin's consent in a state court located in the district.