```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
```
RENE ROTHSTEIN RUBIN,

                Plaintiff,

     -against-

MICHAEL P. MANGAN, ESQ.; MANGAN & GINSBERG LLP, and MICHAEL ROTHSTEIN,

                Defendants.

**MEMORANDUM & ORDER**
**21-CV-1401 (NGG) (PK)**

NICHOLAS G. GARAUFIS, United States District Judge.

This is a diversity action arising out of intrafamilial and legal disputes over a failed investment. Plaintiff Dr. Rene Rothstein Rubin brings legal malpractice and breach of fiduciary duty claims against attorney Michael P. Mangan and the law firm Mangan & Ginsberg LLP (together, the "Mangan Defendants") and a breach of fiduciary duty claim against her brother, Michael Rothstein. (Second Am. Compl. ("SAC") (Dkt. 63).)

Pending before the court is the Mangan Defendants' joint motion to dismiss the Second Amended Complaint for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and failure to state a claim under Fed. R. Civ. P. 12(b)(6). (Mangan Defs.' Mot. to Dismiss (Dkt. 70); Mangan Defs.' Mem. in Supp. of Mot. to Dismiss ("Mot. to Dismiss") (Dkt. 70-2); Pl.'s Opp. to Mot. to Dismiss ("Opp.") (Dkt. 70-9); Mangan Defs.' Reply in Supp. of Mot. to Dismiss ("Reply") (Dkt. 70-11).)

For the reasons explained below, the Mangan Defendants' motion to dismiss is DENIED in part and GRANTED in part.

## I. BACKGROUND

At this procedural posture, the court credits Rubin's factual allegations as true and draws all reasonable inferences in her favor. *See Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000).[1]

### A. Factual History

In 2014, Defendant Rothstein and others invested $3 million in a purported hedge fund, Bright Lake L.P. ("Bright Lake"). (SAC ¶ 10.) Their investment included between $80,000 to $100,000 of Plaintiff Rubin's personal funds, withdrawn from a bank account that Rubin and certain of her family members jointly maintained at Stifel, Nicolaus & Company, Inc. ("Stifel").[2] (*Id.* ¶ 11.) The withdrawal, which was made without her knowledge or consent, was effectuated using Rubin's forged signature. (*Id.* ¶¶ 10-11.)

By 2015, the $3 million investment had plummeted to several thousand dollars in value. (*Id.* ¶ 12.) Rothstein and other investors then filed a lawsuit against Bright Lake in New York Supreme Court (the "Bright Lake Action"). (*Id.* ¶¶ 12-13; SAC Ex. A ("Bright Lake Compl.") (Dkt. 63-1).) The named plaintiffs, represented by Defendant Mangan, included six members of Rubin's family, as well as Rubin, who was unaware of both the investment and the litigation at that time. (*Id.* ¶¶ 13, 16.) The defendants in that action (the "Bright Lake Defendants") failed to appear or defend themselves, and a default judgment was entered against them in January 2018. (*Id.* ¶ 23.) As of the time of

---

[1] When quoting cases, and unless otherwise noted, all citations and quotation marks are omitted, and all alterations are adopted.

[2] Rubin voluntarily dismissed Stifel as a defendant in this action pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i). (Not. of Vol. Dismissal (Dkt. 5).)

the filing of the Second Amended Complaint, the Bright Lake Defendants had neither been located nor paid the judgment. (*Id.* ¶ 24.)

In December 2018—more than three years after the Bright Lake Action was filed and almost one year after the default judgment was entered against the missing defendants—Rubin learned about the litigation. (*Id.* ¶ 25.) She then contacted Mangan, who was identified as the plaintiffs' attorney on the Bright Lake Action pleadings. (*Id.*)

Rubin and Mangan spoke on the phone on January 23, 2019, corresponded over email, and, in March 2019, met at a restaurant in Penn Station. (*Id.* ¶¶ 25-28.) After Rubin told Mangan that she was unaware of the Bright Lake Action until late 2018, Mangan informed her that the Bright Lake Defendants could not be found. (*Id.*) Mangan told her that, because the Bright Lake Defendants were unlikely to satisfy the judgment against them, he had brought a separate lawsuit arising out of the same investment against Wells Fargo (the "Wells Fargo Action"). (*Id.* ¶ 28.) He promised to add her to the Wells Fargo Action and that she would be party to any resulting settlement or award. (*Id.*)

Based on the statements Mangan made to her concerning the Bright Lake and Wells Fargo Actions during the course of their in-person, email, and phone communications, Rubin believed that Mangan represented her as her attorney in both of those lawsuits. (*Id.* ¶ 25-29.)

Mangan then disappeared for several months. After unsuccessful attempts to contact him, Rubin threatened to report him to the New York Disciplinary Board. (*Id.* ¶ 33.) In response, Mangan promised, again, that he would add her to the Wells Fargo Action. (*Id.*) He sent her a confidentiality agreement to sign, again indicating that she would be added to the pleadings and that he would represent her in the action. (*Id.* ¶¶ 34-35.)

Those promises went unmet. (*Id.* ¶ 36.) Unable to reach him again, Rubin contacted the attorney for Wells Fargo who was identified on the confidentiality agreement. (*Id.* ¶ 36 n.3.) The Wells Fargo attorney informed Rubin that the matter had settled and advised her to contact her own attorney. (*Id.*)

After that conversation with the Wells Fargo attorney, Rubin sought documentation from Mangan, and, on October 7, 2019, she requested her client file from both Mangan and Stifel. (*Id.* ¶¶ 37, 48.) The bank sent some documents, and, after repeated requests from Rubin, Mangan sent her documents bearing her forged signature that purported to authorize the withdrawal of her funds from the joint account. (*Id.* ¶¶ 37-40.) At the time of filing the Second Amended Complaint, she had not received her client file from him. (*Id.* ¶ 49.)

### B. Procedural History

In November 2019, Rubin brought this action in the Eastern District of Pennsylvania, and, in August 2020, filed an Amended Complaint in that district. (Compl. (Dkt. 1); Am. Compl. (Dkt. 34).) On February 17, 2021, the case was transferred to the Eastern District of New York. (Order (Dkt. 44).) On June 21, 2021, Rubin filed a Second Amended Complaint with leave of the court, which the Mangan Defendants moved to dismiss for lack of subject matter jurisdiction and for failure to state a claim for relief. (SAC; Mot. to Dismiss.)

### A. Rubin's Claims

Rubin asserts causes of action for professional negligence under an attorney malpractice theory against Mangan (Claim I); for legal malpractice under a respondeat superior theory against Mangan & Ginsberg LLP (Claim II); for breach of fiduciary duty against Mangan (Claim III); for breach of fiduciary duty under a respondeat superior theory against Mangan & Ginsberg LLP (Claim IV); and for breach of fiduciary duty against Rothstein

4

(Claim V).[3] (SAC.) She seeks compensatory, consequential, and punitive damages, plus interests and costs. (*Id.*)

## II. SUBJECT MATTER JURISDICTION

The Mangan Defendants contend that the court lacks subject matter jurisdiction because Rubin's Second Amended Complaint has not—and cannot—satisfy the amount-in-controversy minimum of $75,000, exclusive of interests and costs. Rubin responds that she has adequately claimed, in good faith, damages that exceed the jurisdictional minimum and, further, that the Mangan Defendants are collaterally estopped from raising this argument, as they previously asserted it and lost in the Pennsylvania federal court. (Opp. at 6-7.)

For the reasons stated below, the court finds that the complaint satisfies the relevant jurisdictional requirements. Accordingly, the Mangan Defendant's argument for dismissal on jurisdictional grounds is denied.

### A. Legal Standard

Federal courts have original subject matter jurisdiction over actions between diverse citizens where the amount in controversy exceeds $75,000, exclusive of interests and costs. 28 U.S.C. § 1332. On a Fed. R. Civ. P. 12(b)(1) motion, the party invoking federal jurisdiction "has the burden of proving that it appears to a reasonable probability that the claim is in excess of the statutory jurisdictional amount." *GW Holdings Grp., LLC v. U.S. Highland, Inc.*, 794 F. App'x 49, 50 (2d Cir. 2019). "[T]his burden is hardly onerous because there is 'a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy.'" *Cooper Wiring Devices, Inc. v. Novikov*, No. 05-cv-2824 (NGG), 2007 WL 2287888, at *2

---

[3] Defendant Rothstein has answered the complaint and has not moved for dismissal or joined his co-defendants' motion to dismiss.

(E.D.N.Y. Aug. 8, 2007) (quoting *Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 63 (2d Cir. 1999)). "A plaintiff may satisfy this jurisdictional minimum by aggregating claims against multiple defendants, but only when their liability is common, undivided, or joint." *Nastasi v. Lari*, No. 15-cv-06066 (SIL), 2017 WL 943935, at *3 (E.D.N.Y. Mar. 9, 2017).

To rebut the good faith presumption, the party challenging jurisdiction must "show to a legal certainty that the amount recoverable does not meet the jurisdictional threshold." *GW Holdings Grp.*, 794 F. App'x at 51. "The 'legal certainty' inquiry is 'analyzed by what appears on the face of the complaint.'" *Peoples Club of Nigeria Int'l, Inc. v. Peoples Club of Nigeria Int'l - New York Branch, Inc.*, 821 F. App'x 32, 34 (2d Cir. 2020) (quoting *Wolde-Meskel*, 166 F.3d at 63). It is "not easy" to rebut the good faith presumption, *GW Holdings Grp., LLC*, 794 F. App'x at 51, and any doubts should be "resolved . . . in favor of the subjective good faith of the plaintiff," *Peoples Club of Nigeria Int'l, Inc.*, 821 F. App'x at 34. Accordingly, "dismissal is not warranted" even "where [the] allegations leave grave doubt about the likelihood of a recovery of the requisite amount."[4] *Zacharia v. Harbor Island Spa, Inc.*, 684 F.2d 199, 202 (2d Cir. 1982); *see also Tongkook Am. v. Shipton Sportswear Co.*, 14 F.3d 781, 786 (2d Cir. 1994) (To warrant dismissal, "[t]he legal impossibility of recovery must be so certain as virtually to negat[e] the plaintiff's good faith in asserting the claim.").

    **B. Discussion**

Rubin alleges that she suffered damages in the amount of the initial $80,000 to $100,000 investment, plus interest on that

---

[4] If the plaintiff does not ultimately recover the jurisdictional minimum, they may be denied costs and, additionally, costs may be imposed on them. 28 U.S.C. § 1332(b).

6

amount, and that she was further damaged by her exclusion from the Wells Fargo Action and settlement. (*See, e.g.*, SAC ¶¶ 56-57.) The Mangan Defendants contend that the jurisdictional minimum cannot be met because the damages claimed against them are severable from those against Defendant Rothstein, such that the maximum sum of damages that could be recoverable from them is Rubin's *pro rata* portion of the $14,823.79 Wells Fargo settlement.

The Second Amended Complaint includes the following allegations related to the amount of claimed damages as to Rothstein and the Mangan Defendants:

- "Without Plaintiff's knowledge or consent, approximately $80,000-[$]100,000 of Plaintiff's personal funds [were] withdrawn from the account Plaintiff maintained at Stifel, Nicolaus & Company ('Stifel') jointly with her siblings, and invested with Bright Lake." (*Id.* ¶ 11.)

- "In or about July 2015 . . . , Plaintiff's brothers and others learned that they had lost 99% of their outstanding investment, and that their accounts were now worth collectively just a few thousand dollars." (*Id.* ¶ 12.)

- As a result of Defendant Mangan's conduct, "Plaintiff has been damaged, as she has lost her initial investments, and has not been able to benefit from any settlement between plaintiffs and defendants in the Wells Fargo case." (*Id.* ¶¶ 56, 65.)

- "As a result of Defendant Rothstein's conduct, Plaintiff has been damaged, as she has lost her initial investments and potential interest." (*Id.* ¶ 78.)

The Mangan Defendants have not demonstrated to a legal certainty that Rubin cannot recover the jurisdictional minimum from them. As an initial matter, evidence of a settlement agreement does not cap potential damages, particularly where a

7

plaintiff alleges that she was improperly excluded from the underlying litigation that resulted in the settlement agreement. *See Insituform Techs., LLC v. Liberty Mut. Ins. Co.*, No. 19-cv-6873 (CJS), 2021 WL 307565, at *5 (W.D.N.Y. Jan. 29, 2021) (declining to cap damages at the settlement amount for jurisdictional purposes). Nor have they shown that Rubin has failed to sufficiently allege that they and Rothstein are jointly liable for her alleged damages of, at a minimum, $80,000. *See Travelers Ins. Co. v. Broadway W. St. Assocs.*, No. 92-cv-5650 (SWK), 1994 WL 174242, at *7 (S.D.N.Y. May 5, 1994).

Rubin alleges the following facts to plead that Rothstein's and the Mangan Defendants' liability is intertwined:

- "By failing to communicate with Plaintiff, Mangan enabled Defendant Rothstein to keep Plaintiff in the dark about the fact that he had 'invested,' and then lost, Plaintiff's funds." (SAC ¶ 21.)

- "Because Mangan's breach of his professional duties kept Plaintiff ignorant about [the loss of Plaintiff's funds], Mangan joined his interest with that of Defendant Rothstein and assisted Rothstein in concealing his fraudulent actions from Plaintiff." (*Id.* ¶ 22.)

- "Mangan's failure to include Plaintiff in the [Wells Fargo action] was a breach of [his] duty . . . [which] enabled Defendant Rothstein to capture more of the amount recovered in the second action than Rothstein would have recovered if he had had to share the recovery with Plaintiff." (*Id.* ¶¶ 30-31.)

- "Upon information and belief, Mangan has repeatedly breached his duties to Plaintiff because he chose to assist Defendant Rothstein in keeping Plaintiff ignorant about the fact that Rothstein had taken and lost her money, and to assist

8

> Rothstein in avoiding any need to share recovered funds with Plaintiff." (*Id.* ¶ 50.)

Viewed from Rubin's standpoint, *see Kheel v. Port of New York Auth.*, 457 F.2d 46, 49 (2d Cir. 1972), *cert. denied*, 409 U.S. 983 (1972), these allegations sufficiently plead that the claims against Rothstein and the Mangan Defendants are "tied together by combination or conspiracy." *Travelers Ins. Co.*, 1994 WL 174242, at *7; *cf. Grayson v. Williams*, No. 19-cv-5303, 2019 WL 5788325, at *3 (E.D.N.Y. Nov. 6, 2019).

Thus, the Mangan Defendants' jurisdictional argument is denied.

### III. FAILURE TO STATE A CLAIM FOR RELIEF

The Mangan Defendants next argue that Rubin has failed to state a claim for relief with respect to her legal malpractice claims (Claims I and II); breach of fiduciary duty claims (Claims III and IV); and demand for punitive damages. For the reasons explained below, her legal malpractice claims and her demand for punitive damages claims against the Mangan Defendants are sustained, and her breach of fiduciary duty claims against the Mangan Defendants are dismissed.

#### A. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "In deciding a motion pursuant to Rule 12(b)(6), the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Brown v. Omega Moulding*

*Co.*, No. 13-cv-5397 (SJF) (ARL), 2014 WL 4439530, at *2 (E.D.N.Y. Sept. 9, 2014) (*citing Aegis Ins. Services, Inc. v. 7 World Trade Co., L.P.*, 737 F.3d 166, 176 (2d Cir. 2013)). However, "mere labels and conclusions or formulaic recitations of the elements of a cause of action will not do; rather, the complaint's factual allegations must be enough to raise a right to relief above the speculative level." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010). "In assessing the legal sufficiency of a claim, the court may consider those facts alleged in the complaint, as well as documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007).

## B. Discussion

### 1. Professional Negligence Claims

The Mangan Defendants argue that Rubin's professional negligence claims (Counts I and II) must be dismissed. (Mot. to Dismiss at 11.) Specifically, they contend that Rubin has not sufficiently alleged that Mangan owed her a legal duty or that she sustained actual loss. (*Id.*) For the reasons explained below, these arguments do not have merit.

#### a. Elements of Legal Malpractice

"[T]o state a claim for legal malpractice under New York law, a plaintiff must adequately allege 1) an attorney-client relationship, and 2) attorney negligence, 3) which is the proximate cause of, 4) actual damages." *Kirk v. Heppt*, 532 F. Supp. 2d 586, 591 (S.D.N.Y. 2008). "[T]he issue [of] whether a pleading sufficiently states a cause of action for legal malpractice poses a question of law which can be determined on a motion to dismiss." *Prudential Ins. Co. of Am. v. Dewey Ballantine, Bushby, Palmer & Wood*, 170 A.D.2d 108, 115 (App. Div. 1991), *aff'd*, 80 N.Y.2d 377 (1992).

10

### b. *Existence of an Attorney Client Relationship*

Courts consider the following six factors (none of which is dispositive) to determine whether an attorney-client relationship exists under New York Law:

> 1) whether a fee arrangement was entered into or a fee paid; 2) whether a written contract or retainer agreement exists indicating that the attorney accepted representation; 3) whether there was an informal relationship whereby the attorney performed legal services gratuitously; 4) whether the attorney actually represented the individual in one aspect of the matter (*e.g.*, at a deposition); 5) whether the attorney excluded the individual from some aspect of the litigation in order to protect another (or a) client's interest; 6) whether the purported client believes that the attorney was representing him and whether this belief is reasonable.

*Makhoul v. Watt, Tieder, Hoffar & Fitzgerald, LLP*, No. 11-cv-5108 (PKC), 2015 WL 5158477, at *4 (E.D.N.Y. Sept. 2, 2015).

Rubin has sufficiently alleged the existence of an attorney-client relationship. She asserts that she was identified as a plaintiff in the Bright Lake Action, and that Mangan was identified on the pleadings as counsel for the plaintiffs in that matter. In addition, she alleges that she believed that Mangan represented her in both the Bright Lake and Wells Fargo Actions. That belief was based on his involvement as lawyer for plaintiffs in the Bright Lake Action, where she was identified as a plaintiff, and on statements that he made to her, including his promises that she would be added to the pleadings in the Wells Fargo Action and that she would be entitled to recover from any settlement achieved in that matter. These allegations adequately plead that Mangan "actually represented" Rubin in the litigation, and that she reasonably believed that he was her attorney. *See id.* Thus, the Mangan Defendants' argument that Mangan did not owe her a legal duty is rejected.

c. *Actual Loss*

To plead actual loss, a complaint must sufficiently allege that, "but for counsel's alleged malpractice, the plaintiff would not have sustained some actual ascertainable damages." *Pellegrino v. File*, 291 A.D.2d 60, 63 (1st Dep't 2002); *see also Russo v. Feder, Kaszovitz, Isaacson, Weber, Skala & Bass, LLP*, 301 A.D.2d 63, 67 (1st Dep't 2002) ("A failure to establish proximate cause requires dismissal regardless of whether negligence is established."). "Where the injury suffered is the loss of a cause of action, the measure of damages is generally the value of the claim lost." *Campagnola v. Mulholland, Minion & Roe*, 76 N.Y.2d 38, 42 (1990). "[S]peculative damages or conclusory claims of damage [cannot] be a basis for legal malpractice." *Russo*, 301 A.D.2d at 67.

At the motion to dismiss stage, "Plaintiff need only allege, not prove, the proximate cause element of the legal malpractice claim." *Even St. Prods., Ltd. v. Shkat Arrow Hafer & Weber, LLP*, 643 F. Supp. 2d 317, 322 (S.D.N.Y. 2008).

Rubin has adequately alleged actual loss caused by the Mangan Defendants' conduct. She asserts that, as a result of their alleged breach, she lost the opportunity to recover in the Wells Fargo Action and that, because she believes the statute of limitations has likely lapsed, she lost the chance to be involved in the litigation of those claims. At this procedural posture, her allegations are sufficient to plead that the Mangan Defendants proximately caused her actual loss.[5]

---

[5] The court expresses no opinion as to whether the alleged loss will ultimately be established; it concludes only that the complaint has sufficiently alleged the elements of legal malpractice to survive the Mangan Defendants' motion to dismiss.

12

### 2. Breach of Fiduciary Duty Claim

Rubin's breach of fiduciary duty claims against the Mangan Defendants, which are based on the same set of facts and seek the same relief as her legal malpractice claims, are dismissed. *Nordwind v. Rowland*, No. 04-cv-9725 (LTD) (AJP), 2007 WL 2962350, at *4 (S.D.N.Y. Oct. 10, 2007) ("Under New York law, where a claim for fiduciary duty is premised on the same facts and seeking the identical relief as a claim for legal malpractice, the claim for fiduciary duty is redundant and should be dismissed."), *aff'd*, 584 F.3d 420 (2d Cir. 2009).

### 3. Punitive Damages

The Mangan Defendants move to dismiss Rubin's demand for punitive damages on the grounds that she has not alleged sufficiently "outrageous" conduct. (Mot. to Dismiss at 27-28.) This argument is premature. *See Hunter v. Palisades Acquisition XVI, LLC*, No. 16-cv-8779 (ER), 2017 WL 5513636, at *9 (S.D.N.Y. Nov. 16, 2017) ("Because punitive damages are a form of damages, not an independent cause of action, a motion to dismiss a prayer for relief in the form of punitive damages is procedurally premature."). "[T]he trend among courts applying New York law seems to be to deny attempts to dismiss prayers for punitive damages at the motion to dismiss stage because it is not even clear that there is a requirement that a complaint seeking punitive damages must plead specific facts that would support an award of such damages." *Wang v. Tesla, Inc.*, No. No. 20-cv-3040 (NGG) (SJB), 2021 WL 3023088, at *5 (E.D.N.Y. July 16, 2021). Thus, Rubin's demand for punitive damages survives at this juncture.

## IV. CONCLUSION

For the reasons stated above, the Mangan Defendants' Motion to Dismiss [Dkt. 70] is DENIED in part and GRANTED in part.

SO ORDERED.

Dated: November 11, 2021
         Brooklyn, New York

                                     /s/ Nicholas G. Garaufis
                                     NICHOLAS G. GARAUFIS
                                     United States District Judge